# EXHIBIT B

Unison HomeBuyer Agreement ID Number FRX-079772

# UNISON HOMEBUYER COVENANT AGREEMENT

## ARTICLE ONE
## INTRODUCTORY PROVISIONS

**1.1 Transaction Documents; Purpose of Unison HomeBuyer Covenant Agreement.** Pursuant to that certain Unison HomeBuyer Option Agreement (**"Unison HomeBuyer Option Agreement"**) dated as of 01/08/2019 ("**Effective Date**"), KEITH B. ALLEN AND DAWN M. ALLEN, AS JOINT TENANTS ("**Owner**") is granting to Unison Agreement Corp., a Delaware corporation, its successors and assigns ("**Investor**"), an option ("**Option**") to purchase an undivided fractional interest ("**Investor Percentage**") in that certain residential real property known as [redacted] Farrington St N, Roseville, MN 55113 (the "**Property**"), in partial consideration of Investor's providing Owner that certain amount of down payment funds (the "**Unison Down Payment**") in connection with Owner's purchase of the Property ("**Owner Property Purchase**"). Under the Unison HomeBuyer Option Agreement, Owner is giving Investor the right, but not the obligation, to exercise its Option and purchase an undivided percentage interest in and to the Property upon the sale of the Property or on the occurrence of any other **Exercise Event** specified in the Unison HomeBuyer Option Agreement. This Unison HomeBuyer Covenant Agreement (**"Unison HomeBuyer Covenant Agreement"**), dated as of the Effective Date, sets forth the representations, warranties, duties and covenants of Owner and Investor during the **Term** of the Option and whenever reasonable or necessary to protect the rights of the parties.

The Unison HomeBuyer Agreement ("**Unison HomeBuyer Agreement**") consists of the following transaction documents together with any and all addenda, supplements, schedules, and exhibits thereto (**"Transaction Documents"): (a)** this Unison HomeBuyer Covenant Agreement; **(b)** the Unison HomeBuyer Option Agreement; **(c)** a memorandum giving notice of the Option and the Unison HomeBuyer Agreement, recorded in the county where the Property is located ("**Unison HomeBuyer Recorded Memorandum**"); and **(d)** a deed of trust (or mortgage) and security agreement, together with any riders thereto giving notice of the Option as a secured interest, recorded in the county where the Property is located (**"Unison HomeBuyer Security Instrument"**).

**1.2 Definitions.** The Unison HomeBuyer Agreement contains certain defined terms ("**Defined Terms**"). All Defined Terms either have their meaning described within the Transaction Documents, or are defined in alphabetical order in Schedule A to this Unison HomeBuyer Covenant Agreement. The first use of any Defined Term in any Transaction Document is in **bold-face** type, and in some cases may also be placed within quotation marks and parentheses.

## ARTICLE TWO
## REPRESENTATIONS AND WARRANTIES

**2.1 Title, Occupancy, Capacity, Authority; Intent Of Agreement.**

**(a) Fee Simple Title.** Upon consummation of the Owner Property Purchase, Owner shall be the owner of the Property and have marketable and insurable absolute title to the Property, free of any other claims, restrictions, leases, liens and other encumbrances or interests against the title, other than **Permitted Encumbrances** and **Permitted Senior Liens**.

**(b) Principal Residence.** Owner will occupy the Property as Owner's **Principal Residence** throughout the Term, unless otherwise agreed by Investor, in writing, in its **Permitted Discretion**.



© 2016, Unison

**(c) Capacity.** Owner has full capacity to enter into the Unison HomeBuyer Agreement and each of the Transaction Documents and, upon execution and delivery, the Unison HomeBuyer Agreement shall constitute a legal, valid and binding agreement and obligation of Owner.

**(d) Authority.** Owner is a **Natural Person** with the legal power, right and authority to grant the Option, to enter into the Unison HomeBuyer Agreement and each of the Transaction Documents, and to consummate all transactions contemplated by the Unison HomeBuyer Agreement. If the Property is to be held in a **Revocable Trust**, Owner has executed and delivered to Investor the revocable trust rider to the Unison HomeBuyer Security Instrument ("**Revocable Trust Rider**") warranting the identical legal power, right and authority of the **Trustee(s)** and **Trustor(s)**.

**(e) Intent and Purpose of Agreement.** Owner acknowledges that the Unison HomeBuyer Agreement is not offered by Investor, and should not be used by Owner, for use as a source of short-term (fewer than three year) funding for the purchase of residential real estate, for the funding of investment in residential real estate with the intention of near-term resale of a property, or for trading or price speculation in home prices by real property dealers, traders, re-sellers, or otherwise. Owner acknowledges that the Unison HomeBuyer Agreement is instead exclusively offered by Investor as a source of funding for the purchase of a residence in an arm's-length, fair market transaction pursuant to which Owner will occupy the residence as principal residence (unless otherwise agreed to in writing by Investor, in its Permitted Discretion) for a period of three years or more from the Effective Date in order to permit Investor a reasonable time in which to recoup its transaction costs in originating its investment, and that the following provisions, in addition to this **Section 2.1(e)** of the Unison HomeBuyer Covenant Agreement, are expressly designed, and intended by Owner and Investor, to effectuate this purpose and intent: Unison HomeBuyer Covenant Agreement **Sections 2.2, 2.5, 3.5, 6.2, 7.1(b), 7.3(d), 9.4(c), 10.2, 10.4(b)** and **10.4(c)**. Owner further acknowledges that evidence of intent by Owner to use the Unison HomeBuyer Agreement other than in accordance with this purpose and intent shall raise a presumption of bad faith on the part of Owner which shall constitute a breach of the Unison HomeBuyer Agreement if not rebutted by clear and convincing evidence.

**2.2 No Lawsuits, Claims, Foreclosures, Or Violations; Property Defects and Conditions.**

**(a)** To the best of Owner's knowledge, after due and diligent inquiry, there is no litigation or arbitration pending or threatened against Owner or the Property that might adversely affect the value of the Property or the ability of Owner to perform Owner's obligations under the Unison HomeBuyer Agreement;

**(b)** To the best of Owner's knowledge, after due and diligent inquiry, there is no foreclosure, notice of default, notice of sale, condemnation, environmental, zoning, or land-use regulation proceeding; or any material lawsuit, tax claim, special assessment, or other dispute, present or threatened, which could affect the use or value of the Property. Owner shall notify Investor immediately of any such proceedings of which Owner becomes aware.

**(c)** To the best of Owner's knowledge, after due and diligent inquiry, there are no operations or activities upon, or present or proposed use or occupancy of the Property or portion thereof, that are not or will not be fully compliant with all state, federal and local laws, zoning ordinances, and regulations.

**(d)** There are no material defects or conditions on or affecting the Property or title to the Property undisclosed to Investor which are now known to or could reasonably be discovered by Owner, which if later disclosed or discovered, could affect the future use or value of the Property. Owner acknowledges that evidence of misrepresentation or nondisclosure by Owner in contravention of this **Section 2.2(d)** shall raise a presumption of bad faith on the part of Owner which shall constitute a breach of the Unison HomeBuyer Agreement if not rebutted by clear and convincing evidence.



© 2016, Unison

**2.3 No Advice. Owner understands that granting Investor the Option and entering into the Unison HomeBuyer Agreement can have significant tax, financial and estate planning consequences. Owner acknowledges that Investor has urged Owner to discuss the Unison HomeBuyer Agreement with family members, heirs, and with independent tax, legal and financial advisors to ensure an understanding of the risks and benefits of the Unison HomeBuyer Agreement with respect to Owner's particular situation, and that of Owner's family and heirs, and Owner has had the opportunity to do so to Owner's full satisfaction. Owner has reviewed, and understands the risks and benefits of, the Unison HomeBuyer Agreement.**

**In granting the Option and entering into the Unison HomeBuyer Agreement, Owner is not relying on any information or representation by Investor, its agents, its affiliates, or any of their officers, employees or agents, regarding: (a) the value of the Property; (b) the advisability of Owner's purchasing the Property or entering into the Unison HomeBuyer Agreement or any transaction contemplated thereunder; or (c) the tax implications and consequences of entering into the Unison HomeBuyer Agreement or any transaction contemplated thereunder. Owner has made, and will make, Owner's own investigation and seek independent advice regarding such matters, as Investor has expressly urged.**

**2.4 Spouse Or Other Resident Not On Title.** Owner has identified and obtained the signatures of all "**Non-Owner Occupants**" who will occupy the Property on the **Notice and Acknowledgment Regarding Spouses, Partners and Co-Occupants Who Are Not Signatories To The Unison HomeBuyer Agreement** ("**Non-Owner Occupant Disclosure**") in the form attached hereto as Exhibit B. Owner must make, and advise all Non-Owner Occupants to make, independent investigation regarding the legal and financial effect of the Unison HomeBuyer Agreement upon the sale of the Property, the death of the last surviving Owner ("**Last Surviving Owner**"), the end of the Term, or following an **Event Of Default** hereunder. Investor makes no representations as to consequences of Owner's granting the Option or entering into the Unison HomeBuyer Agreement on the rights of any Non-Owner Occupant. If any additional adult person not on record title commences to occupy the Property during the Term, Owner must promptly notify Investor and deliver Investor a complete and revised Non-Owner Occupant Disclosure.

**2.5 Documentation and Information Supplied by Owner; Financial Condition of Owner.** All financial and other documentation and other information Owner has provided to Investor in granting the Option, or in applying for or entering into the Unison HomeBuyer Agreement is truthful, complete, not misleading, and fairly and accurately reflects the financial condition of Owner and the condition of the Property as of the date supplied, as of the date of Owner's execution of the Unison HomeBuyer Agreement, as of the date of the closing of the Owner Property Purchase, and as of the Effective Date. There has been no material change in Owner's financial condition or the condition of the Property since Owner's application to Investor.

**2.6 Continuing Obligations.** Owner is making the representations and warranties herein to induce Investor to enter into the Unison HomeBuyer Agreement. All representations and warranties given, and instruments delivered by Owner in connection with the Unison HomeBuyer Agreement (including Owner's application for the Unison HomeBuyer Agreement), are both true and correct at the time given, at the time of execution of the Unison HomeBuyer Agreement by Owner and as of the Effective Date, and Owner must promptly notify Investor during the Term if any representation or warranty Owner has made under this **Article Two** or elsewhere ceases to be materially accurate or true. Investor's right to rely on the truth, accuracy and completeness of the representations, warranties and covenants set forth in this **Article Two** shall survive the Term.

**2.7 Conflict.** Owner's execution and delivery of the Unison HomeBuyer Agreement and Transaction Documents, the incurrence of its obligations, the consummation of the transactions it contemplates, and Owner's compliance with its terms, will not conflict with, or result in a breach of, or constitute a default



© 2016, Unison 

under, any note, mortgage, deed of trust, loan, agreement, lease, indenture, evidence of indebtedness, or other agreement or instrument to which Owner is a party or by which any portion of the Property may be bound.

## ARTICLE THREE
## OPTION EXERCISE ON SALE OF PROPERTY

**3.1 In General.**

**(a)** Investor may, in its Permitted Discretion, exercise the Option as of any sale, exchange, or other transfer of the Property or any portion thereof by Owner, other than an **Exempted Owner Assignment**. The manner of Option exercise shall be as prescribed in **Section 3** of the Unison HomeBuyer Option Agreement.

**(b)** At any time during the Term, Owner may solicit offers for the Property sale to a third party ("**Third Party Buyer**") without the express approval of Investor, provided Owner complies with all terms and conditions of this **Article Three**. If a sale or transfer of the Property does not satisfy the terms and conditions of this **Article Three**, it shall not constitute a Permitted Sale ("**Permitted Sale**"), and Investor shall not be obligated to release Owner from any duty or liability under the Unison HomeBuyer Agreement in connection with the sale or transfer. Any attempted sale or transfer of the Property or any portion thereof by Owner that does not comply with this **Article Three** is an Event Of Default by Owner and is deemed imminently to prejudice **Investor's Rights** hereunder.

**3.2 Requirements Of Permitted Sale.**

**(a)** Notice. Owner must notify Investor in writing of Owner's decision to market, sell or transfer the Property ("**Notice Of Intention To Sell**"), at least 45 days (or otherwise within a commercially reasonable time) prior to the closing of such sale or transfer. Owner must attach to such Notice Of Intention To Sell any and all documents executed by Owner in connection with the Property's marketing or sale (including but not limited to any and all inspection report(s), listing agreements, staging agreements, and preliminary escrow instructions).

**(b) Documentation; Appraisal; Inspections.**

**(i)** Owner must promptly provide to Investor copies of all the following as Owner receives them: **(A)** all offers to purchase the Property; and **(B)** all contracts and other documents related to the prospective sale (including but not limited to inspections, appraisals, escrow instructions, preliminary title reports and other transaction documents and instruments of whatever character relating to the proposed sale or transfer).

**(ii)** In the event that the Third Party Buyer does not obtain, at a minimum, a standard pest report and standard contractor's inspection report in connection with the Property, Owner must obtain such reports, at Owner's sole expense (or, alternatively, Investor may obtain such reports at Owner's expense), and deliver these to Investor no later than fourteen (14) days prior to the proposed closing of the sale. These reports shall be used by Investor to review the terms of the sale, and, along with other reports deemed necessary by Investor, in connection with Investor's determination of the **Deferred Maintenance Adjustment,** if any.

**(iii)** Investor may, in its Permitted Discretion, provide to Owner one or more proposed date(s) for **Appraisal** of the Property, to be performed at Owner's expense in accordance with and subject to the terms of **Section 8.5** below, to ascertain the market value and condition of the Property, including Investor's determination of the **Remodeling Adjustment** and/or Deferred Maintenance Adjustment, if any.



© 2016, Unison 

**(c)** Escrow and Closing.

**(i)** A Permitted Sale must be consummated through an appropriate real property **Escrow** using the services of an **Escrow Holder**. Owner and Investor shall do or cause to be done, any and all acts and things as shall be reasonably necessary for Escrow to close the transactions contemplated in the Unison HomeBuyer Agreement.

**(ii)** The closing of any Permitted Sale shall be scheduled so as to allow Investor: **(A)** to review relevant documents for the Remodeling Adjustment, if any, and Deferred Maintenance Adjustment, if any; and **(B)** to obtain Appraisal(s), in its Permitted Discretion.

**3.3 Option Settlement Or Exercise At Closing Of Permitted Sale**. As of the close of Escrow of a Permitted Sale, and provided Owner has complied with the terms of the Unison HomeBuyer Agreement:

**(a)** Prior to the close of Escrow, Investor shall deliver to Owner or to Escrow Holder a calculation of the **Unison Purchase Price Balance** payable to Owner by Investor for its undivided percentage interest in and to the Property and a statement of any and all monetary amounts owed to Investor as unreimbursed **Protective Advances**, unpaid interest, fees and other charges associated with Protective Advances, or unpaid **Asset Administration Fees** hereunder ("**Unpaid Owner Obligations**"). Because Investor will have previously paid a portion of the **Unison Purchase Price** to Owner in the form of the Unison Down Payment, the Unison Purchase Price shall be reduced by the Unison Down Payment in calculating the Unison Purchase Price Balance.

**(b)** Upon close of, and through Escrow for the Permitted Sale, Investor shall be entitled to exercise its Option to purchase its undivided percentage interest in and to the Property, the value of which is calculated as the **Ending Agreed Value** of the Property (determined in accordance with **Section 10.3** below) multiplied by the Investor Percentage, in exchange for the Unison Purchase Price Balance minus any Unpaid Owner Obligations as set forth in **Section 3.3(a)** above; Owner however may elect to settle the Unison HomeBuyer Agreement and terminate Investor's Option to purchase Investor's undivided percentage interest by tendering to Investor, through Escrow for the Permitted Sale, the amount calculated as follows: the Ending Agreed Value (determined in accordance with **Section 10.3** below), multiplied by the Investor Percentage, minus the Unison Purchase Price Balance (such amount to be termed the "**Investor Proceeds**"), together with any and all Unpaid Owner Obligations (the Investor Proceeds, if any, together with the Unpaid Owner Obligations, if any, to be termed the "**Investor Interest.**"). Upon Escrow's delivery and Investor's acceptance of the Investor Interest, in and through Escrow for the closing of the Permitted Sale, Investor shall deliver to Escrow Holder such executed, notarized documents or other instruments as are required by Escrow Holder to effect a full release or reconveyance of the Option, the Unison HomeBuyer Agreement, the Unison HomeBuyer Security Instrument, and the other Transaction Documents, which documents of release shall be recorded by Escrow in the county where the Property is located.

**(c)** In the event Owner does not terminate Investor's Option to purchase and settle the Unison HomeBuyer Agreement pursuant to **Section 3.3(b)** above, then Investor may exercise its Option and consummate the purchase of its undivided percentage interest in and to the Property through Escrow simultaneously with closing of a Permitted Sale, as follows: Owner shall deed Investor its percentage interest in and to the Property through Escrow for the Permitted Sale; Investor and Owner, as co-owners of the Property, shall deed the Property to Third Party Buyer through Escrow for the Permitted Sale; and Escrow shall close the Permitted Sale, transfer title to Third Party Buyer, and liquidate Investor and Owner's respective percentage interests in and to the Property.

**(d)** Priority of Investor Interest In Connection With Senior Liens. On close of Escrow of a Permitted Sale, prior to the disbursement of any sums to Investor, Escrow Holder shall first disburse from



© 2016, Unison 

proceeds in Escrow, all amounts necessary to satisfy in full any outstanding loans secured by "**Permitted Senior Liens**" or "**Approved Subsequent Liens**" on the Property.

**(e)** **<u>Closing Costs and Sales Commissions</u>.** Owner shall pay all costs in connection with the Permitted Sale of the Property, or in connection with Investor's Option exercise that is followed by a sale of the Property in order to liquidate Investor's percentage interest, including, without limitation, recording fees and costs, reconveyance fees, Escrow fees, title insurance fees, federal, state, local and documentary transfer taxes ("**Closing Costs**") and all sales commissions ("**Sales Commissions**") owed in connection with the Sale or Investor's Option exercise, not including any closing costs owed by Third Party Buyer. Closing Costs and Sales Commissions shall be paid from the amounts that are owed to Owner, and not from any amounts that are owed to Investor.

**(f) <u>Owner's Obligation For Transaction Costs.</u> In the event that there are amounts in Escrow equal to the Investor Interest, together with sufficient amounts to release and reconvey all Senior Liens or Approved Subsequent Liens on the Property (including those Senior Loans secured by Senior Liens for which the lien holder has agreed to accept less than the outstanding amounts due in satisfaction of Owner's obligation), but there are insufficient amounts to additionally satisfy those Closing Costs, Sales Commissions, taxes, fees, other loans or obligations of Owner, or any other out of pocket expenses required to be paid to third parties in order to deliver clear title to the Property to the Third Party Buyer, Owner shall be solely responsible for paying such other obligations, costs and expenses from Owner's other assets or separate funds.**

**(g)** If the date scheduled for close of Escrow of a Permitted Sale falls after the Expiration Date of the Unison HomeBuyer Agreement, the Term and the Expiration Date shall automatically extend for a reasonable period of time necessary to permit settlement of the Investor Interest or, alternatively, Investor's purchase of its undivided percentage interest and subsequent sale of the Property by Investor and Owner as co-owners to a Third Party Buyer.

**<u>3.4 Additional Restrictions On Permitted Sales.</u>** In addition to the requirements set forth in **Sections 3.1 and 3.2** above, no sale or transfer of the Property shall constitute a Permitted Sale, nor shall Investor consent to any proposed sale of the Property, which does not meet the following restrictions and requirements:

**(a) <u>Arm's Length</u>.** Any sale or transfer of the Property must be at arm's length, made on commercially reasonable terms and entered into in good faith.

**(b) <u>Responsibility For Liens</u>.** In connection with any sale or transfer, Owner shall be solely responsible for conveying title free and clear of any liens, and for satisfying any and all loans and other obligations secured by liens on the Property.

**(c) <u>Sufficient Cash To Owner</u>.** Except as consented to by Investor in writing in its Permitted Discretion, no proposed sale of the Property shall be a Permitted Sale if the consideration for the sale price is not provided by the Third Party Buyer in good and lawful funds at close of Escrow, or if the sale or transfer employs financing by Owner, non-cash consideration, or wraparound financing by Third Party Buyer such that full cash consideration in the amount of the sale price is not conveyed to the Owner.

**(d) <u>No Sales "Subject To" Or Defeasible Sales</u>.** Except as consented to by Investor in writing in its Permitted Discretion, no sale or other transfer which purports to convey title to the Property by Owner to a Third Party Buyer "subject to" the lien created by the Unison HomeBuyer Agreement, or "subject to" any other existing lien or payment obligation on the Property, nor any sale or transfer which purports to be defeasible by Owner and Third Party Buyer after close of Escrow upon the occurrence of some future contractually-specified event, shall be a Permitted Sale.



© 2016, Unison

**3.5 Sale Price At Variance With Appraised Or Estimated Market Value; Special Provisions Relating to Sale By Owner, Intrafamily Transactions and Sales to Entities.**

**(a)** In the case of any proposed sale or transfer by Owner wherein Investor determines in its Permitted Discretion that the proposed sale price differs materially from the then-estimated market value of the Property or an **Appraised Value**, or in any **Sale By Owner Transaction** or **Intrafamily Transaction** proposed by Owner, Investor shall have the right, but not the obligation, to take any or all of the following actions, in its Permitted Discretion: **(i)** to make an offer in writing to purchase the Property from Owner for the same price or higher, and upon the same terms and conditions, as the proposed offer from the Third Party Buyer and, if such offer is rejected by Owner, to obtain a written affidavit under oath from Owner stating the reasons for the rejection; **(ii)** to require Owner, Third Party Buyer and, where applicable, their respective real estate brokers of record conducting the proposed sale transaction, to execute an affidavit under oath attesting that **(A)** the relationship between Owner and Third Party Buyer and the proposed transaction is at arm's length; and **(B)** that the proposed sale price of the Property has been determined either by reasonable exposure to the real estate market in the area where it is located or by other valuation methods acceptable to Investor in its Permitted Discretion, which affidavit shall be accompanied, at Investor's request, with supporting written documentation; **(iii)** to require that one or more Appraisals of the Property be conducted in order for valuation of the Property to be established, pursuant to Sections 8.5 and 8.6 of this Unison HomeBuyer Covenant Agreement;

**(b)** In any Sale By Owner or Intrafamily Transaction or a sale to any Third Party Buyer that is not a Natural Person (or Natural Persons taking title to the Property in the form of a Revocable Trust), or otherwise under circumstances of Owner's fraud, misrepresentation or bad faith hereunder, Investor shall have the right, in its Permitted Discretion to require that an Appraised Value, rather than the **Effective Sale Price**, be used to determine the Ending Agreed Value of the Property.

**3.6 No Investor Liability.** Investor shall not be liable to Owner for, and Owner hereby holds Investor harmless from, any and all liability or loss in connection with any delay or postponement of closing of a sale or transfer hereunder **(a)** resulting from any reasonable inquiry or dispute by Investor pertaining to the estimated market value or Appraised Value of the Property, the Remodeling Adjustment, the Deferred Maintenance Adjustment, or to the validity of any proposed sale or transfer as a Permitted Sale; **(b)** where Owner has failed to provide Investor with timely, accurate and complete documentation or materials as required hereunder or otherwise requested by Investor in connection with such sale or transfer; or **(c)** resulting from any action undertaken by Investor under the terms of **Section 3.5** above.

## ARTICLE FOUR
## OPTION EXERCISE AT TERM

**4.1 In General.** In its Permitted Discretion, Investor shall have the right to exercise the Option as of the Expiration Date of the Unison HomeBuyer Agreement, as specified in **Section 2** of the Unison HomeBuyer Option Agreement, subject to the terms and conditions of this **Article Four**.

**4.2 Opening Escrow At Term; Inspections; Appraisals.** Investor's exercise of the Option at Term, and its purchase of an undivided percentage interest in and to the Property, shall be conducted through Escrow. At least 90 days, but not more than 150 days, prior to the Expiration Date of the Unison HomeBuyer Option Agreement, Investor shall open Escrow with an Escrow Holder selected by Investor. Investor and Owner shall, at a mutually convenient date and time, conduct both a home inspection and Appraisal, at Owner's expense, for the purpose of ascertaining the Ending Agreed Value, the Deferred Maintenance Adjustment, if any, and the Remodeling Adjustment, if any. Investor reserves the right to order more than one home inspection or Appraisal, in its Permitted Discretion.



© 2016, Unison 

**4.3 Escrow: Deliveries, Timing; Closing.** As of the close of Escrow, and provided Owner has complied with the terms of the Unison HomeBuyer Agreement:

**(a)** Prior to the close of Escrow, Investor shall deliver to Owner or to Escrow Holder a calculation of the Unison Purchase Price Balance payable to Owner by Investor for its undivided percentage interest in and to the Property and a statement of Unpaid Owner Obligations, if any. Because Investor will have previously paid a portion of the Unison Purchase Price to Owner in the form of the Unison Down Payment, the Unison Purchase Price shall be reduced by the Unison Down Payment in calculating the Unison Purchase Price Balance.

**(b)** Upon close of, and through Escrow for the Option exercise, Investor shall be entitled to exercise its Option to purchase its undivided percentage interest in and to the Property, the value of which is calculated as the Ending Agreed Value of the Property (determined in accordance with **Section 10.3** below) multiplied by the Investor Percentage, in exchange for the Unison Purchase Price Balance minus any Unpaid Owner Obligations, as set forth in **Section 4.3(a)** above. Owner however may elect to settle the Unison HomeBuyer Agreement and terminate Investor's Option to purchase its undivided percentage interest by tendering the amount calculated as the Investor Interest to Investor through Escrow. Upon Escrow's delivery and Investor's acceptance of the Investor Interest, Investor shall deliver to Escrow Holder such executed, notarized documents or other instruments as are required by Escrow Holder to effect a full release or reconveyance of the Option, the Unison HomeBuyer Agreement, the Unison HomeBuyer Security Instrument, and the other Transaction Documents, which documents of release shall be recorded by Escrow in the county where the Property is located.

**(c)** In the event Owner does not terminate Investor's Option to purchase and tender Investor the Investor Interest pursuant to **Section 4.3(b)** above, then Investor may exercise its Option and consummate the purchase of its undivided percentage interest in and to the Property, and Owner shall promptly deed Investor such interest in and to the Property, whereupon Investor and Owner, as co-owners of the Property, shall promptly market and sell the Property in order to liquidate their respective percentage interests therein and thereto; and the Term shall automatically extend for such reasonable time as will permit Investor's purchase, and the closing of such subsequent sale.

**(d) Closing Costs and Sales Commissions.** Owner shall pay all Closing Costs and Sales Commissions owed in connection with the sale of the Property following Investor's Option exercise, not including any closing costs owed by Third Party Buyer. Closing Costs and Sales Commissions shall be paid from the amounts that are owed to Owner, and not from any amounts that are owed to Investor.

**4.4 Owner's Right To Sell Property In Permitted Sale Prior To Option Exercise At Term.** Owner may sell or transfer the Property in a Permitted Sale prior to close of Escrow under this **Article Four**, provided any such sale or transfer complies with the requirements of **Article Three** above, and such sale or transfer closes no later than 11:59 p.m. Pacific Time on the date at least five (5) Business Days prior to the Expiration Date.

## ARTICLE FIVE
## OPTION EXERCISE AS OF DEATH OF OWNER

**5.1 In General.** Investor has the right in its Permitted Discretion to exercise the Option as of the death of the Last Surviving Owner, according to the procedures set forth in this **Article Five**.

**5.2 Opening Escrow Inspections; Appraisals**

**(a)** Each Owner must at all times during the Term have designated at least one living Natural Person out of Owner's administrators, devisees, executors, heirs, legatees or representatives (collectively



© 2016, Unison 

and individually, "**Owner's Estate**") which Person shall be charged with notifying Investor immediately in writing of the death of such Owner.

**(b)** Upon or following Investor's receipt of notice of the death of the Last Surviving Owner, in the event Investor elects to exercise the Option, Investor shall open Escrow with an Escrow Holder selected by Investor. The date selected for close of Escrow may be no earlier than 180 days following the date of death of the Last Surviving Owner; unless agreed to by Owner's Estate in writing; provided, further, that if Investor deems in its Permitted Discretion that Owner's Estate has commenced good faith efforts to sell the Property in a Permitted Sale within the 180 day period following the date of death, Investor may in its Permitted Discretion extend the date selected for close of Escrow for a maximum of two consecutive 90-day periods following the 180th day from death of the Last Surviving Owner to permit Owner's Estate to accomplish such Permitted Sale.

**(c)** Investor and Owner's Estate shall, at a mutually convenient date and time, conduct both a home inspection and Appraisal of the Property, at Owner's Estate's expense, for the purpose of ascertaining the Ending Agreed Value, the Deferred Maintenance Adjustment, if any, and the Remodeling Adjustment, if any. Investor reserves the right to order more than one home inspection or Appraisal, in its Permitted Discretion.

**5.3 Escrow; Deliveries; Timing; Closing.** As of the close of Escrow, and provided Owner has complied with the terms of the Unison HomeBuyer Agreement:

**(a)** Prior to the close of Escrow, Investor shall deliver to Owner's Estate or to Escrow Holder a calculation of the Unison Purchase Price Balance payable to Owner by Investor for its undivided percentage interest in and to the Property and a statement of Unpaid Owner Obligations, if any. Because Investor will have previously paid a portion of the Unison Purchase Price to Owner in the form of the Unison Down Payment, the Unison Purchase Price shall be reduced by the Unison Down Payment in calculating the Unison Purchase Price Balance.

**(b)** Upon close of, and through Escrow for the Option exercise, Investor shall be entitled to exercise its Option to purchase its undivided percentage interest in and to the Property, the value of which is calculated as the Ending Agreed Value of the Property (determined in accordance with **Section 10.3** below) multiplied by the Investor Percentage, in exchange for the Unison Purchase Price Balance minus any Unpaid Owner Obligations, as set forth in **Section 5.3(a)** above. Owner's Estate however may elect to settle the Unison HomeBuyer Agreement and terminate Investor's Option to purchase its undivided percentage interest by tendering the amount calculated as the Investor Interest to Investor through Escrow. Upon Escrow's delivery and Investor's acceptance of the Investor Interest, Investor shall deliver to Escrow Holder such executed, notarized documents or other instruments as are required by Escrow Holder to effect a full release or reconveyance of the Option, the Unison HomeBuyer Agreement, the Unison HomeBuyer Security Instrument, and the other Transaction Documents, which documents of release shall be recorded by Escrow in the county where the Property is located.

**(c)** In the event Owner's Estate does not terminate Investor's Option to purchase and tender Investor the Investor Interest pursuant to **Section 5.3(b)** above, then Investor may exercise its Option and consummate the purchase of its undivided percentage interest in and to the Property, and Owner's Estate shall promptly deed Investor such interest in and to the Property, whereupon Investor and Owner's Estate, as co-owners of the Property, shall promptly market and sell the Property in order to liquidate their respective percentage interests therein and thereto; and the Term shall automatically extend for such reasonable time as will permit Investor's purchase, and the closing of such subsequent sale.

**(d) Closing Costs and Sales Commissions**. Owner's Estate shall pay all Closing Costs and Sales Commissions owed in connection with the sale of the Property following Investor's Option exercise, not including any closing costs owed by Third Party Buyer. Closing Costs and Sales Commissions shall be



© 2016, Unison 

paid from the amounts that are owed to Owner's Estate, and not from any amounts that are owed to Investor.

**5.4 Reserved.**

**5.5 Administration of Estate; Investor Rights.** Owner's Estate shall administer and protect the Property so as to preserve Investor's Rights to the extent permitted by law following the death of Owner; and Investor's rights in and to the Property under the Unison HomeBuyer Agreement shall have priority over expenditures by Owner's Estate which are not reasonably necessary to administer and protect the Property.

**5.6 Owner's Estate's Right to Sell the Property Prior to Close of Escrow.** Owner's Estate may sell the Property in a Permitted Sale within the period prescribed in **Section 5.2(b)**.

**5.7** All time periods specified in this **Article Five** shall run from the actual date of the death of the Last Surviving Owner. Failure of Owner's Estate or any other Person to notify Investor of the death of the Last Surviving Owner shall not toll or suspend the running of any time period specified herein.

## ARTICLE SIX
## NON-EXERCISE TERMINATIONS OF OPTION

**6.1** Subject to Investor's Rights hereunder and to those representations and warranties, and duties and covenants of Owner which by their nature survive the Expiration Date; and to the Investor remedies set forth in **Article Seven** below, the Option shall terminate if:

**(a)** Investor in its Permitted Discretion elects not to exercise the Option, and voluntarily allows it to lapse as of any Exercise Event, the Term, or the Expiration Date;

**(b)** Investor in its Permitted Discretion voluntarily terminates the Unison HomeBuyer Agreement in writing;

**(c)** Investor acquires title to 100% of the Property;

**(d)** the Property is destroyed and the insurance proceeds are paid to Investor in the full amount specified in **Section 8.16** of this Unison HomeBuyer Covenant Agreement; or

**(e)** the Property is condemned, in whole and not in part, and the condemnation proceeds are paid to Investor in the full amount specified in **Section 8.17** of this Unison HomeBuyer Covenant Agreement.

**6.2 Special Termination By Owner.** Owner acknowledges and agrees that under the terms of the Unison HomeBuyer Agreement, Investor and Owner have covenanted and agreed that the Option may not be exercised until the occurrence of the earlier of an Exercise Event as defined in the Unison HomeBuyer Option Agreement, or the Expiration of the Term. Notwithstanding the foregoing, Investor acknowledges and agrees that commencing on the third (3rd) anniversary of the Effective Date, Owner shall have the right to request a special termination of the Option in advance of an Exercise Event or Expiration of Term (**"Special Termination"**) by payment to Investor of the greater of: the Unison Down Payment plus any Unpaid Owner Obligations; or the Investor Interest calculated at the time of Special Termination (**"Special Termination Price"**). The Investor Proceeds in any Special Termination shall be calculated using an Ending Agreed Value equal to the greater of the Appraised Value of the Property at the time of Special Termination, or the **Solicited Sale Value.** Investor's consent to a Special Termination shall not be unreasonably withheld.

**(a) Notice; Proof Of Funds.** At least 45 days prior to the proposed Special Termination, Owner shall deliver notice to Investor that Owner is offering a Special Termination and open Escrow with an Escrow Holder selected by Investor. With such notice, Owner shall provide to Investor true and correct



© 2016, Unison 

copies of: **(i)** all offers for the purchase of the Property, or any expressions of interest therein; and **(ii)** all listings for the sale of the Property, if any. Investor shall have the right in its Permitted Discretion to require proof from Owner of adequate funds to pay the Special Termination Price.

**(b)** Investor and Owner shall, at a mutually convenient date and time, conduct both a home inspection and Appraisal of the Property for the purpose of ascertaining the Ending Agreed Value, the Deferred Maintenance Adjustment, if any, and the Remodeling Adjustment, if any. Investor reserves the right to order more than one home inspection or Appraisal, in its Permitted Discretion.

**(c)** **Investor's Deliveries.** Prior to close of Escrow, provided Owner has complied with the terms of the Unison HomeBuyer Agreement, Investor shall deliver to Escrow:

**(i)** such executed, notarized documents or other instruments as are required by Escrow Holder to effect a full release and/or reconveyance of the Unison HomeBuyer Recorded Memorandum, Unison HomeBuyer Security Instrument and the Unison HomeBuyer Agreement; and

**(ii)** a statement calculating the Special Termination Price payable to Investor by Owner in consideration for such full release and reconveyance.

**(d)** **Owner's Deliveries.** On or prior to the close of Escrow, Owner shall deliver the Special Termination Price into Escrow as demanded by Investor together with any and all Closing Costs, recording expenses or other expenses in connection with Escrow or such Special Termination.

**(e)** **Closing.** At close of and through Escrow, Investor shall be paid the Special Termination Price. Upon, and only upon, Investor's accepting the Special Termination Price, Investor shall instruct Escrow to release and reconvey the Unison HomeBuyer Recorded Memorandum, the Unison HomeBuyer Security Instrument, and to record any and all other documents as Escrow reasonably requires to reflect the release and/or reconveyance of the Unison HomeBuyer Agreement in the county where the Property is located.

**(f)** Investor shall retain the right, in Investor's Permitted Discretion, to reject any purported tender by Owner of the Special Termination Price where **(i)** Investor has not had adequate opportunity to review inspections, appraisals, or other documents, or **(ii)** Investor deems Owner's tender insufficient, inadequate, or untimely.

**(g)** **Non-Disclosure Or Sale At Or After Special Termination.** If Owner fails to disclose an offer to purchase the Property made within ninety (90) days prior to, or Investor becomes aware of a Solicited Sale Value within ninety (90) days following a Special Termination, Owner shall remain liable to Investor for the amount, if any, by which the Investor Interest computed according to the Solicited Sale Value exceeds the Special Termination Price actually paid to Investor.

## ARTICLE SEVEN
## DEFAULT

**7.1 Events Of Default.** The occurrence of any of the following shall constitute an event of default by Owner (**"Event Of Default"**) hereunder:

**(a)** **Failure To Perform.** Owner **(i)** breaches or fails to perform any obligation or covenant under the Unison HomeBuyer Agreement, including but not limited to **(A)** failure to honor Investor's Rights; or **(B)** failure to cooperate with, or interference with, Investor's Option exercise and purchase of an undivided percentage interest in and to the Property; or **(ii)** Owner otherwise takes any action to impede



© 2016, Unison 

the exercise of the Option, or to reject Investor's rights under the Unison HomeBuyer Agreement or any of the Transaction Documents as unenforceable.

**(b) <u>Misrepresentation</u>.** Owner makes (or has made) any oral or written representation or warranty to Investor that is false or misleading as of the time given, including, without limitation, any breach of the representations and warranties given by Owner in **Section 2.2** above; any misrepresentation or suppression of material fact in connection with the amount or kind of consideration given to Owner in any sale or transfer of the Property, in connection with the condition or value of the Property, or in connection with any financial and other documentation and other information Owner has provided to Investor in applying for or entering into the Unison HomeBuyer Agreement; or Owner fails to correct a material representation that has become untrue and which may reasonably be expected to affect the Property, its value, or Investor's Rights.

**(c) <u>Other Events Of Default</u>.** Any and all of the following: **(i)** any loans that are secured by liens on the Property, whether recorded or unrecorded, become delinquent (whether or not such loans or liens have been approved or subordinated to by Investor); **(ii)** any taxes on the Property become delinquent; **(iii)** Owner transfers or attempts to transfer the Property or any interest therein, except in accordance with the Unison HomeBuyer Agreement; **(iv)** Owner ceases to occupy the Property as Owner's Principal Residence, or leases or rents the Property, or any portion of the Property, without Investor's express written consent in its Permitted Discretion; **(v)** the Property is used for any commercial purpose (other than a "home office" within the meaning of applicable U.S. tax regulations) or as anything other than a residential dwelling; **(vi)** Owner fails to maintain, preserve or repair the Property to the standards and in the manner specified in the Unison HomeBuyer Agreement; **(vii)** any lien in violation of the terms of the Unison HomeBuyer Agreement attaches to the Property; **(viii)** the total amount of indebtedness secured by the Property exceeds the **Maximum Authorized Debt**; **(ix)** Owner fails to maintain insurance on the Property as prescribed in the Unison HomeBuyer Agreement; **(x)** Owner assigns, or attempts to assign or transfer the Option in violation of the Unison HomeBuyer Agreement; **(xi)** any event of insolvency of any Owner, including but not limited to the commencement of any bankruptcy proceeding by or against any Owner or the appointment of a conservator of the affairs of any Owner or a receiver for the Property; **(xii)** following the death of the Last Surviving Owner, Owner's Estate does not comply with **Article Five** or any other provision of the Unison HomeBuyer Agreement; or **(xiii)** any other action or event occurs which may reasonably be expected to have a material adverse effect on the Property, the value of the Property, or Investor's Rights.

**<u>7.2 Acceleration And Power Of Sale</u>**.

**(a) The occurrence of one or more of the Events Of Default in Section 7.1 above, if material and uncured, shall be deemed a failure of Owner's performance of Owner's obligations as secured by the Unison HomeBuyer Security Instrument, and Investor shall be entitled to demand cure of such Event of Default, and both to exercise its Option and demand performance by Owner (or Owner's Estate) of any and all of its obligations under the Unison HomeBuyer Agreement. The failure of Owner (or Owner's Estate) to cure such Event of Default and/or to render full performance of Owner's obligations under the Unison HomeBuyer Agreement shall permit Investor to invoke any and all remedies permitted by the Unison HomeBuyer Agreement, according to applicable law, including those remedies provided in Section 7 of the Unison HomeBuyer Security Instrument. The procedures for Investor's exercise of its remedies under the Unison HomeBuyer Security Instrument shall be as set forth in the Unison HomeBuyer Security Instrument and as specified by applicable law.**

**(b) <u>Liquidated Investor Bid Amount.</u>** Owner and Investor agree and acknowledge that, because the damages that would arise from a failure of Owner's performance secured by the Unison HomeBuyer Security Instrument under this **Article Seven** may be uncertain, depend on many factors, and be extremely difficult to ascertain, the amount of any investor bid ("**Investor Bid Amount**") to be made in



© 2016, Unison 

connection with a foreclosure sale of the Property by Investor or otherwise, shall be a liquidated amount equal to the Investor Interest calculated using an Ending Agreed Value for the Property as determined under **Section 10.4(f)** below.

**(c) Right Of Cure And Reinstatement**. Owner's rights to discontinue enforcement of the Unison HomeBuyer Security Instrument by cure and reinstatement shall be as set forth in the Unison HomeBuyer Security Instrument and as specified by applicable law.

**7.3 Additional Remedies For Certain Events Of Default.**

**(a) Termination.** Investor shall be entitled, but is not obligated to, demand immediate **Termination** of the Unison HomeBuyer Agreement, the return of the Unison Down Payment and any and all other payments tendered to Owner hereunder, and the immediate payment of the amount, if any, by which the Investor Interest calculated pursuant to **Section 10** below exceeds the Unison Down Payment, together with any and all **Attorney's Fees** and costs incurred by Investor in connection with such termination, upon the discovery, occurrence, or during the continuation of any of the following: **(i)** fraud, bad faith, or material misrepresentation or nondisclosure by Owner; **(ii)** breach of the representations and warranties given in **Section 2.1(e)** or **Section 2.2(d)** above; or **(iii)** a transfer or sale, or attempted transfer or sale, of the Property by Owner in violation of the terms of the Unison HomeBuyer Agreement.

**(b) Damages For Breach**. Owner shall be responsible to pay Investor any damages incurred by Investor arising or relating to Owner's Events Of Default hereunder.

**(c) Specific Performance And Injunctive Relief**. Owner and Investor agree that if Investor is not allowed to exercise its rights under the Unison HomeBuyer Agreement, or if Owner fails to comply with its obligations thereunder, the damages to Investor may be irreparable and extremely difficult to estimate, making money damages or any remedy at law inadequate. Thus, in addition to any other rights and remedies available to it in law, equity or otherwise, Investor shall be entitled to specific performance of the covenants, agreements and rights contained in the Unison HomeBuyer Agreement. Owner and Investor further agree and acknowledge that a violation or threatened violation of the Unison HomeBuyer Agreement by Owner is likely to cause irreparable injury to the Investor and that, in addition to any other remedies that may be available, in law, in equity or otherwise, the Investor shall thereafter be entitled to obtain immediate and other injunctive relief against the threatened breach of the Unison HomeBuyer Agreement or the continuation of any such breach by Owner, without the posting of a bond or the necessity of proving actual damages.

**(d) Reduced Unison Purchase Price Balance.** Owner and Investor agree that in the event of **(i)** fraud, bad faith, or material misrepresentation or nondisclosure by Owner; **(ii)** any transfer or sale, or attempted transfer or sale, of the Property by Owner in violation of the terms of the Unison HomeBuyer Agreement, or **(iii)** any other prolonged, material and uncured default by Owner under the terms of the Unison HomeBuyer Agreement, the Investor Interest may, in Investor's Permitted Discretion, be calculated by applying a Unison Purchase Price Balance which has been reduced by an amount equal to ten percent (10%) of the Unison Down Payment.

**(e) Investor Right To Make Protective Advances.** Investor shall have the right to make **Protective Advances** as provided in **Section 8.11**, in connection with any Event Of Default, whether or not Investor is also pursuing any other remedies under this **Article Seven**.

**(f) Investor Rights To Enter Property.** Investor shall have the right to enter the Property in connection with or following any Event Of Default hereunder to the extent reasonable or necessary in Investor's Permitted Discretion **(i)** to conduct inspection(s) and Appraisal(s) of the Property at Owner's or Owner's Estate's expense, for the purpose of ascertaining the Ending Agreed Value, the Deferred Maintenance Adjustment, if any, and Remodeling Adjustment, if any; **(ii)** to prevent waste of the Property



© 2016, Unison 

by Owner or Owner's Estate; and (iii) for any other purpose reasonable and necessary to prevent imminent or continuing harm to or diminution in value of the Property, in Investor's Permitted Discretion.

**7.4 Option Exercise And Orderly Sale As Additional Remedy For Event Of Default.** Investor and Owner agree that, upon an Event Of Default by Owner, in addition to the remedies provided in Paragraph 7 of the Unison HomeBuyer Security Instrument and otherwise under this **Article Seven**, Investor and Owner, or Owner's Estate, may mutually elect a special remedy of Option exercise and Orderly Sale ("**Orderly Sale**"), as follows:

**(a) Offer and Acceptance.**

**(i)** Upon any Event Of Default by Owner (and provided that Owner has first reasonably exhausted any loss mitigation remedies offered to Owner by the holder of a Senior Lien), Investor may, but is not obligated to, in its Permitted Discretion, offer Owner the remedy of Option exercise and Orderly Sale. Investor shall tender such offer to Owner by opening an Escrow with an Escrow Holder selected by Investor, and promptly offering in writing to tender the Unison Purchase Price Balance into Escrow, in proposed exchange for Owner's granting and conveying to Investor through Escrow Investor's undivided fractional interest in and to the Property, together with a right of Investor to exclusively and unilaterally market and sell the Property in an orderly market sale, which offer shall advise Owner that Owner may have alternative means to cure an Event of Default related to delinquencies on a **Senior Loan** by application to the holder of the **Senior Lien**.

**(ii)** Within 10 days of Investor's delivery of such offer, Owner may, but is not obligated to, accept Investor's offer of Option exercise and Orderly Sale. Upon written notice of acceptance of such offer, Investor shall deliver the Unison Purchase Price Balance into escrow. Following such delivery, Owner shall deliver into Escrow: **(A)** a grant deed, executed by Owner and notarized, granting and delivering to Investor good and marketable fee simple title to an undivided fractional interest in the Property equivalent to the Investor Percentage, which deed Escrow Holder shall promptly cause to be recorded in the county where the Property is located; and **(B)** a notarized **Irrevocable Limited Power of Attorney** substantially in the form of Exhibit A hereto executed by Owner authorizing and empowering Investor (although only a co-owner of the Property) to exclusively market, advertise, sell and transfer title to one hundred percent (100%) of the Property, including Owner's interest therein, upon Owner's delivery of the deed; and **(C)** instructions to Escrow concerning disbursement of the Unison Purchase Price Balance to remedy Events Of Default in accordance with **Section 7.4(b)** below, and in form and content acceptable to Investor.

**(b) Disbursements to Cure Events Of Default.** Promptly upon recordation of the deed and delivery of the Irrevocable Limited Power of Attorney, Investor will instruct Escrow Holder to disburse from the Unison Purchase Price Balance in Escrow as Protective Advances those amounts necessary to cure and remedy any and all Events Of Default, including delinquent payments, accrued interest, late fees, reinstatement fees and other penalties, together with any and all amounts which Investor deems necessary, in its Permitted Discretion, to repair, protect and maintain the Property. In the event amounts in Escrow are insufficient to cure and remedy any and all such Events Of Default, Investor may make additional Protective Advances; or Owner may advance amounts from Owner's separate assets or funds. Funds remaining in Escrow following such disbursements shall thereafter be retained by Escrow pending closing of the Orderly Sale.

**(c) Marketing and Sale.**

**(i)** Promptly following the cure of Owner's Event(s) Of Default, Investor may commence to market and sell the Property in an Orderly Sale. Owner will cooperate with Investor in



© 2016, Unison 

conducting the Orderly Sale, provided that Investor, although only a co-owner of the Property, shall have the sole and exclusive right in its Permitted Discretion to market, advertise, list, determine the asking price of, and to solicit, accept, reject or negotiate any offers of sale of the Property, without the consent of Owner.

**(ii)** Investor will promptly provide copies of all written offers for sale of the Property to Owner, together with all contracts and other documents related to the prospective sale (including but not limited to listing and commission agreements, inspections, appraisals, escrow instructions, preliminary title reports and other documents and instruments of whatever character).

**(iii)** Owner shall obtain a standard pest report and standard contractor's inspection report in connection with the Property, at Owner's sole expense, (or, alternatively, Investor may obtain such reports at Owner's expense), and deliver these reports to Investor no later than twenty-one (21) days prior to the proposed closing of the sale. These reports shall be used by Investor to review the terms of the sale, and, along with other reports deemed necessary by Investor, for Investor's determination of the Deferred Maintenance Adjustment, if any, or Remodeling Adjustment, if any.

**(iv)** Investor may, in its Permitted Discretion, provide to Owner one or more proposed date(s) for an Appraisal of the Property, to be performed at Owner's expense in accordance with and subject to the terms of **Section 8.5** below to ascertain the market value and condition of the Property, including Investor's determination of the Remodeling Adjustment, if any, or Deferred Maintenance Adjustment, if any.

**(d) Occupancy, Use and Entry During Orderly Sale.** Owner shall have sole and exclusive use of occupancy of the Property during an Orderly Sale unless otherwise mutually agreed in writing by the parties, subject to any and all reasonable rights of Investor and Investor's agents, affiliates or other representatives to enter the Property in order for Investor to carry out its exclusive right to market and sell the property, including, without limitation, rights of entry as reasonable, necessary or required to clean, repair, paint, stage, photograph, inspect, hold publicly open, and show the Property to prospective buyers. Investor shall have the right, as co-owner of the Property, to encumber the Property by obtaining loans secured by liens on the Property, in order to raise those funds reasonably required to improve, repair and prepare the Property for sale at a competitive price in its market.

**(e) Closing.** Closing of the Orderly Sale will be scheduled so as to: **(i)** allow Owner to exercise the Owner **Right Of First Refusal;** and **(ii)** permit Investor to calculate the Remodeling Adjustment, if any, and Deferred Maintenance Adjustment, if any. Closing of the Orderly Sale shall be conducted identically to the closing of a **Third Party Sale** as set forth in **Sections 3.3(c), (d), (e),** and **(f)** above.

**(f) Owner Right Of First Refusal On Orderly Sale.** Owner and Owner's Estate shall have a limited Right Of First Refusal to purchase the Property on economic terms identical to those Investor has indicated it is willing to accept for the Orderly Sale of the Property, as follows:

**(i)** At such time as Investor receives a written bona fide offer for an Orderly Sale that Investor is willing to accept, Investor must refrain from accepting such offer and Owner will have until the close of business on the 3rd Business Day following Owner's actual receipt of the offer to execute and deliver a binding purchase contract with Investor to purchase the Property on economic terms (including terms with respect to financing) and within all specified time periods Investor has indicated it is willing to accept.

**(ii)** If the price of a bona fide written offer previously delivered to Investor is materially reduced after delivery to Investor, Investor shall promptly inform Owner in writing of such reduced price and Owner shall have until the close of the 3rd Business Day following Owner's



© 2016, Unison 

actual receipt of such notice to execute and deliver a binding purchase contract with Investor to purchase the Property on economic terms, including the reduced price identical to the revised terms Investor has indicated it is willing to accept.

**(iii)** Owner's (or Owner's Estate's) failure to respond to Investor within the time set forth in this **Section 7.4(f)** shall constitute Owner's (or Owner's Estate's) waiver of the Owner Right Of First Refusal.

**(iv)** The closing of the sale to Owner or Owner's Estate shall occur not later than the date specified for the closing of the proposed Orderly Sale.

**(v)** Owner or Owner's Estate shall pay any and all Closing Costs and Sales Commissions incurred in connection with the sale to Owner or Owner's Estate and the proposed Orderly Sale.

**(vi)** If there are any outstanding loans secured by liens on the Property, Owner or Owner's Estate may choose to accept the Property subject to such liens rather than satisfying the loans and removing the liens through Escrow.

**(g)** The right to elect an Orderly Sale upon offer therefor by Investor shall extend to Owner's Estate following an Event Of Default or the death of Last Surviving Owner.

**7.5 Repayment In Bankruptcy**. In the event Investor is required to and does remit or disgorge one or more dollars paid by Owner or Owner's Estate pursuant hereto as a preference claim in a bankruptcy proceeding involving Owner or Owner's Estate, then Investor shall be entitled to assert a claim against Owner or Owner's Estate for each such dollar remitted (and permitted costs herein) under the terms and conditions of the Unison HomeBuyer Agreement, and such claim of Investor shall begin to accrue on the date such dollar is actually remitted and shall automatically survive the Term.

**7.6 Remedies Concurrent And Not Exclusive.** The remedies set forth in this **Article Seven** shall be concurrent, cumulative and not exclusive to the extent permitted by law. Every right, power and remedy granted to Investor in the Unison HomeBuyer Agreement, including the Unison HomeBuyer Security Instrument, shall be in addition to all those rights, powers and remedies granted to Investor at law or in equity or by statute, and each such right, power and remedy may be exercised from time to time and as often and in such order as may be deemed expedient by Investor to the extent permitted by law, and the exercise of any such right, power or remedy shall not be deemed a waiver of the right to exercise, at the same time or thereafter, any other right, power or remedy. An election by Investor to pursue an Option exercise and Orderly Sale will not be deemed to constitute Investor's waiver or consent to any Event(s) Of Default (whether prospective or retrospective), nor a waiver of any of Investor's other rights and remedies under the Unison HomeBuyer Agreement, including those rights under **Section 7** of the Unison HomeBuyer Security Instrument, all of which are concurrent, and shall remain expressly reserved.

## ARTICLE EIGHT
## ADDITIONAL COVENANTS OF OWNER

**8.1 Purposes.** Pursuant to the Unison HomeBuyer Agreement, Investor's Rights depend upon the value of the Property during the Term. To preserve and protect any and all of Investor's Rights hereunder, and to induce Investor to enter into the Unison HomeBuyer Agreement, Owner agrees to each and all of the covenants set forth in **Sections 8.2 – 8.18** below.

**8.2 Maintenance and Repair.**

(a) Owner shall: (i) maintain the Property in good condition; **(ii)** prevent any waste, deterioration or decrease in value due to the Property's condition (ordinary wear and tear excepted); **(iii)** periodically



© 2016, Unison 

perform such repairs and replacements as are customary and reasonable for similar properties in similar locations; and **(iv)** ensure that any operations or activities upon, or use or occupancy of, the Property or any portion of the Property will be in compliance with all state, federal and local laws and regulations, including, without limitation, any applicable laws requiring flood, earthquake or other specific hazard insurance.

**(b)** In no event shall Owner permit the Property to deteriorate such that its condition shall be worse than its condition described in the homeowner disclosure statement(s) and other inspection and third party reports prepared in connection with the Owner Property Purchase, ordinary wear and tear excepted.

**(c)** **No Credit or Offset.** Owner shall not be entitled to any credit, offset or compensation for ordinary maintenance, repairs or replacement that maintain the condition and value of the Property.

**(d)** **Prompt Repair.** To the extent that any material damage to the Property occurs, including, without limitation, from fire, flood, earthquake, hurricane or other natural disaster, Owner shall promptly repair such damage subject only to the provisions of **Section 8.16** below, regarding the disposition and use of insurance proceeds. Investor shall not be obligated to contribute toward, or be responsible for any portion of, the cost of any such repair.

**8.3 Property Modifications and Remodeling Adjustment.**

**(a)** Owner shall have the right at Owner's sole expense to make modifications to the Property without prior written consent of Investor, provided that such modifications do not violate any provision of the Unison HomeBuyer Agreement and are performed in compliance with all applicable state, federal and local statutes, regulations and ordinances, and all appropriate zoning, licensing and permitting requirements.

**(b)** Owner may request the benefit of certain qualified material modifications made to the Property during the Term through an adjustment **("Remodeling Adjustment")** which will be applied by Investor to the determination of the Ending Agreed Value of the Property at the end of the Unison HomeBuyer Agreement Term, provided the following terms and conditions are met, in Investor's Permitted Discretion:

**(i)** Owner must notify Investor of Owner's request for a Remodeling Adjustment in writing no less than 45 days prior to the closing of any Permitted Sale, Option exercise, Special Termination, Orderly Sale, or other event requiring determination of an Ending Agreed Value of the Property. As part of such notice, Owner shall specify the material modifications for which a Remodeling Adjustment is sought, and shall provide Investor with photographic and supporting evidence of the material modifications which meets the requirements set forth in **Section 8.3(b)(iii)** below. Owner shall cooperate with Investor to obtain the Appraisal of the Property in order to calculate the Remodeling Adjustment, if any.

**(ii)** The Appraiser must determine as part of the written Appraisal that Owner's specified material modifications have, as of the time Investor Proceeds are calculated, actually increased the Ending Agreed Value of the Property above a hypothetical Ending Agreed Value at which the Property would have appraised had it not been materially modified. The Appraiser shall be instructed as follows:

**(A)** to derive two values for the Property: the value of the Property as-is (**"Actual Value"**); and the hypothetical value of the Property if it had not been materially modified (**"Hypothetical Value"**), the difference between which shall equal the appraised value of the material modifications. In the event that the Appraisal is conducted



© 2016, Unison 

in connection with a Permitted Sale by Owner, the Appraiser shall assume that the agreed sale price between Owner and Third Party Buyer in the Permitted Sale is the Actual Value of the Property.

**(B)** to determine the value of any material modification for which a Remodeling Adjustment is sought solely in terms of the value, if any, added to the Property, and without reference to the actual or inferred dollar cost of such modifications to Owner;

**(C)** to consider the age, depreciation and potential functional obsolescence of Owner's material modifications in determining their value, if any; and

**(D)** to ascertain the Hypothetical Value of the Property in the absence of Owner's material modifications based on a comparison between the current condition of the Property, and the photographic and supporting evidence of material modification supplied by Owner; provided, however, that the Appraiser shall have no obligation to ascertain any Hypothetical Value unless Owner's photographic and supporting evidence meets the requirements set forth in **Section 8.3(b)(iii)** below in Appraiser's discretion.

**(iii)** Owner shall maintain, and provide to Appraiser and Investor upon any request for a Remodeling Adjustment, photographic and other physical documentation of the Property before completion of the material modifications, which documentation shall be sufficient in scope, clarity, number and detail to permit the Appraiser to compare the Actual Value to the Hypothetical Value, in Appraiser's discretion. No Remodeling Adjustment shall be applied in the event Owner fails to maintain and provide documentation meeting the requirements of this **Section 8.3(b)(iii)**.

**(iv)** No Remodeling Adjustment shall be given to the extent a) Owner modifications are determined by appraisal to have become functionally obsolescent; or b) constitute a **Prohibited Use,** in Investor's Permitted Discretion.

Provided all of the conditions of this **Section 8.3(b)** are met, Investor shall apply a Remodeling Adjustment in its calculation of Investor Proceeds equal to the Actual Value minus the Hypothetical Value, the difference between which shall equal the value of the material modifications and constitute the amount of the Remodeling Adjustment.

**(c) Exclusion for Ordinary and Necessary Maintenance.** A material modification materially affects either the value or the useful life of the Property, while ordinary and necessary maintenance and repairs maintain the condition and value of the Property in its general condition. Costs of ordinary and necessary maintenance and repairs to keep the Property in an efficient operating condition, as more particularly outlined in U.S. Treasury Regulation 1.162-4 (as amended from time to time), are not eligible for any Remodeling Adjustment.

**(d) Prior To the Third (3rd) Anniversary Of Effective Date.** Notwithstanding anything to the contrary in this **Section 8.3**, no Remodeling Adjustment shall be applied by Investor to any determination of the Ending Agreed Value of the Property if Owner elects to sell the Property or the Unison HomeBuyer Agreement is otherwise terminated at any time prior to the third (3rd) anniversary of the Effective Date.

**(e)** If the Appraisal valuation process set forth in **Section 8.3(b)(ii)** above determines that the Actual Value minus the Hypothetical Value yields a negative number, Investor may, in its Permitted Discretion, apply any such decrease in value as a **Negative Remodeling Adjustment** when calculating the Ending Agreed Value, at any time during the Term. In the absence of a request by Owner for a Remodeling Adjustment, if Investor believes the Appraisal valuation process set forth in **Section**



© 2016, Unison 

**8.3(b)(ii)** above would likely result in a Negative Remodeling Adjustment, Investor may, in its Permitted Discretion, obtain such Appraisal.

**8.4 Deferred Maintenance Adjustment.**

**(a)** If, as a result of a home inspection, Appraisal or otherwise, upon any event requiring determination of the Ending Agreed Value, Investor determines that either **(i)** Owner has breached Owner's duties of maintaining and repairing the Property as set forth in this Unison HomeBuyer Covenant Agreement and elsewhere; or **(ii)** the Ending Agreed Value is negatively affected not as a result of market forces, but as the direct result of a condition or defect in, or damage to the Property or its title which either existed as of the Effective Date or which occurred or developed during the Term, Investor shall have the right in its Permitted Discretion to make (in consultation with appraisers, third party experts and inspectors unaffiliated with Investor) a commercially reasonable estimate of the dollar amount of such deferred maintenance and to apply such dollar amount as a "Deferred Maintenance Adjustment" when calculating the Ending Agreed Value.

**(b)** Investor may also, in its Permitted Discretion, apply a Deferred Maintenance Adjustment when determining the Ending Agreed Value of the Property where: **(i)** at the time of the Owner Property Purchase, Investor in its Permitted Discretion identified and expressly reserved for a Deferred Maintenance Adjustment significant material defects or conditions in or on the Property which, if not remedied promptly or within a reasonable time, posed clear and serious risks to the Property improvements or Property value, and Owner failed to correct such defects or conditions; or **(ii)** if Owner knew or had reason to know of such a defect or condition at the time of Owner Property Purchase or during the Term of the Unison HomeBuyer Agreement, but failed or neglected to disclose it to Investor.

**8.5 Appraisal.** The process of valuation of the Property by appraisal and any and all appraisals of the Property obtained by either party in connection with the Unison HomeBuyer Agreement ("**Appraisal**") must conform to this **Section 8.5**. An Appraised Value shall be an independent third party valuation of the Property made pursuant to the terms and conditions of this **Section 8.5**.

**(a) Appraiser.** All Appraisals shall be conducted by an appraiser approved in advance by Investor and unaffiliated with either Investor or Owner, and who satisfies the requirements of Fannie Mae, Freddie Mac or FHA and Title XI of the Financial Institutions Reform, Recovery, and Enforcement Act of 1989 and the regulations promulgated thereunder, and any applicable state laws, as of the date of the Appraisal, and in compliance with the Uniform Standards of Professional Appraisal Practice.

**(b) Appraisals.** All Appraisals must conform to Investor's then-current Appraisal requirements, and to the requirements of **Section 8.5(a)**. Either party may obtain one or more Appraisals of the Property at any time upon reasonable notice to the other party. Owner and Investor shall each fully and reasonably cooperate at their own expense in connection with any Appraisal ordered on the Property. Owner will cooperate with the appraiser by granting full access to the Property and by making available any and all relevant documentation and information in Owner's possession pertaining to, including but not limited to plat maps, surveys, plans, tax or assessor's records, and any other documentation concerning encroachments, dimensions, measurements, setbacks, uses of and modifications to the Property.

**(c) Appraisal Review.** If either party concludes that an Appraisal contains a material omission or material error of fact, such party may, within 10 days after receipt of the Appraisal, request a reconsideration of the Appraisal, as allowed by applicable law, at the party's own cost.

**(d) Remodeling Adjustment.** If Owner requests a Remodeling Adjustment, and the request is determined to be valid in accordance with the provisions of **Section 8.3**, or if Investor believes a Negative Remodeling Adjustment should apply, the appraiser will be instructed to determine the amount of a Remodeling Adjustment, if any, that should be applied to the Ending Agreed Value of the Property as



© 2016, Unison

follows: the appraiser will determine two fair market values for the Property: first, the Actual Value of the Property in its current condition; and second, the Hypothetical Value based upon either the hypothetical absence of specified material modifications or a Prohibited Use. The Actual Value minus the Hypothetical Value shall equal the Remodeling Adjustment. If the Hypothetical Value of the Property is more than the Actual Value, the adjustment will be deemed a Negative Remodeling Adjustment.

**(e)** **Payment of Appraisal Expenses.** As allowed by applicable law, Owner shall pay all expenses ("**Appraisal Expenses**") associated with the first Appraisal obtained in connection with: **(i)** initial valuation of the Property prior to execution of the Unison HomeBuyer Agreement; **(ii)** any proposed sale, Permitted Sale or Orderly Sale; **(iii)** any Option exercise by Investor; **(iv)** any Special Termination; **(v)** any allocation of insurance or condemnation proceeds; **(vi)** any determination of an Investor Bid Amount; and **(vii)** any determination of a Remodeling Adjustment or Deferred Maintenance Adjustment. In the case of one or more additional Appraisals of the Property obtained in connection with any of the events described above, the Appraisal Expenses shall be paid by the party who obtained or requested the Appraisal, or, if both parties agree that an additional Appraisal(s) should be obtained, by both parties divided equally. If Appraisal Expenses have not been paid by the party required to bear them, the other party may subtract them, or direct their payment out of Escrow, from the funds that would otherwise be due to the party liable therefor, as allowed by applicable law.

**8.6 Arbitration of Fair Market and Appraised Value, Remodeling Adjustment, Deferred Maintenance Adjustment. IF INVESTOR AND OWNER ARE UNABLE TO AGREE IN GOOD FAITH ON THE FAIR MARKET OR APPRAISED VALUE OF THE PROPERTY UNDER THE UNISON HOMEBUYER AGREEMENT, OR ON THE AMOUNT OF ANY REMODELING ADJUSTMENT OR DEFERRED MAINTENANCE ADJUSTMENT TO BE APPLIED UNDER THE UNISON HOMEBUYER AGREEMENT, THE ISSUE WILL BE DETERMINED BY BINDING ARBITRATION BEFORE A SINGLE NEUTRAL ARBITRATOR. THE ARBITRATION WILL BE ADMINISTERED BY THE JUDICIAL ARBITRATION AND MEDIATION SERVICE (OR "JAMS") OR ITS SUCCESSOR PURSUANT TO ITS STREAMLINED ARBITRATION RULES AND PROCEDURES (OR SUCCESSOR PROCEDURES). THE ARBITRATION FEES (INCLUDING THE FEES OF THE ARBITRATOR) SHALL BE SHARED EQUALLY BY INVESTOR AND OWNER. OWNER AND INVESTOR SHALL EACH PAY THEIR OWN ATTORNEYS' FEES INCURRED IN CONNECTION WITH SUCH ARBITRATION.**

**8.7 Inspections and Disclosures of Condition.**

**(a)** Owner covenants and agrees, as an express condition of entering into the Unison HomeBuyer Agreement, that Owner shall promptly deliver to Investor, as such are received by Owner or Owner's representatives as part of the Owner Property Purchase, any and all reports, disclosures, inspections, estimates and other writings provided to Owner in connection with the Owner Property Purchase which pertain to conditions on or affecting the Property or which might otherwise affect the value of the Property.

**(b)** Owner agrees that Investor or its agents may upon reasonable notice, make reasonable inspections of both the interior and exterior of the Property both as a condition of entering into, and from time to time during the Term of, the Unison HomeBuyer Agreement. Owner agrees to cooperate in setting the time and allowing entry for any such inspection. If Investor is not permitted to timely inspect the Property it shall be deemed that Owner has failed to maintain and repair the Property as required under the Unison HomeBuyer Agreement, subject to Owner's right to cure within a reasonable time.

**(c)** Investor may in its Permitted Discretion require written homeowner disclosures from Owner from time to time during the Term of the Unison HomeBuyer Agreement, regarding any conditions known to Owner which may affect the Property or its value.



© 2016, Unison 

**(d)** When, either at origination of the Unison HomeBuyer Agreement or during its Term, Investor determines in its Permitted Discretion that any significant material defect or condition exists in or on the Property which, if not remedied promptly or within a reasonable time, poses clear and serious risks to the Property improvements or Property value, Investor may: **(i)** require that Owner promptly remedy such defect or condition at Owner's expense either as a condition precedent to executing the Unison HomeBuyer Agreement or otherwise; **(ii)** note the defect or condition and require that it be remedied at Owner's expense upon Option exercise or other termination or expiration of the Unison HomeBuyer Agreement; or **(iii)** note the defect or condition and require that the cost of remedy or repair be applied as a Deferred Maintenance Adjustment to the Ending Agreed Value whenever a determination thereof is made.

**(e)** Notwithstanding the contents of any disclosure or report pertaining to the Property which is provided to Investor under this **Section 8.7** or otherwise, or the existence of any defect or condition on the Property whether known or unknown by Investor, Investor shall have no liability to Owner or to any third party for, and Owner hereby holds Investor harmless from, any and all loss or liability resulting from or in connection with any defect or condition on or affecting the Property, whether known or unknown, and Investor's interest in and liability in regard to the Property shall at all times be construed as that of a passive investor in, and not as that of a record title owner or occupant of the Property, except as may be expressly provided otherwise under the Unison HomeBuyer Agreement.

**8.8 Occupancy and Use of Property.**

**(a) Principal Residence.** Unless Investor consents otherwise in writing in its Permitted Discretion, at least one Owner shall occupy the Property as Owner's Principal Residence. Owner shall be deemed not to meet this requirement if no Owner is using the Property as living and sleeping quarters for 60 or more consecutive days, or for a total of 180 days out of any 365-day period, without notifying Investor of such absence, obtaining Investor's written consent, and making arrangements satisfactory to Investor in Investor's Permitted Discretion to care for the Property while Owner is gone. The circumstances described above shall define the meaning of "**Principal Residence**." If Owner does not give such notice, obtain consent, or make such arrangements, an Event Of Default will be considered to have occurred on the last day of the 60-day period or on the last of the 180-day period, as applicable. If the Property is held in a Revocable Trust, the occupancy requirement will be satisfied if either any one Owner, or any one Trustor, who is an individual, occupies the Property as a Principal Residence.

**(b) Prohibited Use.** Owner must not **(i)** use the Property in any way other than as a residential property; **(ii)** rent all or any portion of the Property except with Investor's express written consent in its Permitted Discretion; or **(iii)** use or permit the use of the Property for any commercial use, with the exception of a "home office" in compliance with applicable U.S. tax regulations. Owner shall take all reasonable and practical action to prevent the conversion or zoning of the Property for commercial or mixed use (**"Prohibited Use(s)"**).

**(c) Owner Right of Occupancy.** Owner shall enjoy sole right of occupancy of the Property under the Unison HomeBuyer Agreement as an owner and not as a tenant or lessee, whether or not Investor has exercised the Option, subject to the limited Investor rights of entry, Investor rights of repair following Owner Event Of Default, and any and all of Investor rights in connection with an Orderly Sale under **Article Seven** hereof. Owner's right of occupancy shall be effective only so long as Owner **(i)** does not transfer or attempt to transfer the Property except as permitted under the Unison HomeBuyer Agreement, and **(ii)** occupies the Property as provided in the Unison HomeBuyer Agreement. Owner's right of sole occupancy is not transferable by Owner except as part of a Permitted Sale or Orderly Sale, or as otherwise approved by Investor in its Permitted Discretion.

**8.9 Debt Limits and Related Obligations.**



© 2016, Unison

**(a) Limitation on Debt Associated with the Property.**

**(i) Maximum Authorized Debt.** Without Investor's express written approval in its Permitted Discretion, Owner may not at any time increase, or permit the increase of, the total principal balance of loans secured by liens on the Property (including the unused portion of any committed credit line) to exceed the Maximum Authorized Debt specified in the Unison HomeBuyer Option Agreement. The Maximum Authorized Debt limitation applies both to **Permitted Senior Loans** (which pre-existed or originated simultaneously with execution of the Unison HomeBuyer Agreement), and **Approved Subsequent Loans** (new loans secured by the Property approved by Investor in its Permitted Discretion during the Term of the Unison HomeBuyer Agreement).

**(ii) Approved Subsequent Loans.**

**(A)** If during the Term of the Unison HomeBuyer Agreement, the principal balance of all loans secured by liens on the Property is less than the Maximum Authorized Debt, and the Appraised Value of the Property is greater than or equal to the Original Agreed Value, Investor may give written consent to Owner to obtain additional Approved Subsequent Loans on the Property up to the Maximum Authorized Debt, which consent shall not be unreasonably withheld provided that Owner provides to Investor all loan documentation related to the proposed loan (including, but not limited to, any commitment letter, offer letter, term sheet, proposed note, proposed deed of trust or mortgage, preliminary title report, inspections, appraisals and other Property valuations) as such documentation becomes available, but no later than 3 Business Days prior to the proposed close of such loan.

**(B)** If the Appraised Value of the Property at the time of the proposed Subsequent Loan(s) is less than the Original Agreed Value, Investor may give written consent to Owner to obtain a proposed Subsequent Loan(s), but only if such proposed Subsequent Loan(s) are less than or equal to the then-current principal balance of all Permitted Senior Loans on the Property, plus actual and reasonable refinancing costs. Investor's consent shall not be unreasonably withheld provided Owner provides to Investor all loan documentation related to the proposed loan as described in **Section 8.9(a)(ii)(A)**.

**(C)** Investor shall have no obligation to respond to or approve any proposed lending transaction unless and until it has timely received all relevant documents and information.

**(D)** Immediately following the close of any Approved Subsequent Loan, Owner shall ensure that copies of all documents recorded as Approved Subsequent Liens against the Property are delivered to Investor.

**(iii) Prohibited Loans.** Owner may not encumber the Property with, and Investor shall not consent to, any lien on the property that could, in Investor's Permitted Discretion, materially impair Investor's Rights. Such loans shall include, without limitation, reverse mortgage loans, shared appreciation mortgage loans, mortgage loans with negative amortization or prepayment penalties, private or non-institutional loans, unrecorded loans secured by the Property, and certain loans with payment reset or other variable payment features.

**(b) No Investor Liability For Owner Loans.**



© 2016, Unison

**(i)** Investor shall not be liable for (including liability to repay) any loans created or obtained by Owner whether or not pre-existing, subsequent, consented to, approved of, or subordinated to by Investor.

**(ii)** Investor shall not be obligated to execute any documents in connection with any loans created, obtained or refinanced by Owner, except such documents reasonably required to confirm any subordination to which Investor consents hereunder.

**(iii) Investor makes no representations or warranties regarding the terms or availability of any loan that Owner has prior to or may seek during the Term of the Unison HomeBuyer Agreement and Investor shall have no liability to Owner in connection therewith, including as a result of the unavailability or unfavorable terms of any such loan.**

**(c) Subordination.**

**(i)** Except for construction loans, which are addressed below, Investor will subordinate the priority of its rights under the Unison HomeBuyer Agreement to the lien of any lender that extends to Owner an Approved Subsequent Loan, provided that: **(A)** the Approved Subsequent Loan satisfies all of the requirements of **Section 8.9(a)**; **(B)** any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Investor in its Permitted Discretion; and **(C)** Owner pays Investor the Asset Administration Fees associated with such subordination.

**(ii)** Investor may subordinate its lien on the Property to any lender in connection with any construction loan, or other financing of any improvements to the Property if: **(A)** the construction loan satisfies all of the requirements of **Section 8.9(a)**; **(B)** Investor in its Permitted Discretion determines that Investor's Interest is not jeopardized; **(C)** any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Investor in its Permitted Discretion; and **(D)** Owner pays the Asset Administration Fees associated with subordination imposed by Investor.

**(iii)** Investor may subordinate its lien on the Property to a lender in connection with any loan not meeting the requirements specified in **Section 8.9(a)(ii)** only if **(A)** Investor, in its Permitted Discretion, determines that Investor's Rights are not jeopardized; **(B)** any requested subordination and loan documents contain only reasonable and customary terms common to such agreements and acceptable to Investor in its Permitted Discretion; and **(C)** Owner pays Investor the Asset Administration Fees associated with subordination.

**(iv)** Following any subordination by Investor, Owner shall remain obligated to keep current and satisfy all liens on the Property.

**(d) Free of Liens.** Owner shall at all times keep the Property free of any and all liens and title exceptions (including easements), except for: **(i)** Permitted Senior Liens; **(ii)** Approved Subsequent Liens; and **(iii)** Permitted Encumbrances.

**(e) Cure of Defaulted Loans.** To the extent that there is a default under any loan or other obligation secured by a lien on the Property; or notice of default or notice of sale or foreclosure upon, or enforcement of, a lien on the Property, Owner shall take immediate action (upon or without notice or demand from Investor) necessary to: **(i)** terminate such foreclosure or enforcement, **(ii)** satisfy the secured obligation, and/or **(iii)** remove or release such lien from the Property. Whether or not Owner takes such immediate action, Investor may take such action as it deems necessary in its Permitted Discretion to protect Investor's Rights hereunder including, without limitation, advance of funds as Protective



© 2016, Unison

Advances, pursuit of any and all remedies set forth in **Article Seven**, or an offer to Owner of Option exercise and Orderly Sale.

**(f) No Investor Loans.** Investor shall have no authority to obtain or increase any loans from third parties that are secured by liens against the Property except in connection with an Orderly Sale.

**8.10 Taxes and Assessments.**

**(a) Payments.** Owner shall promptly pay all taxes and assessments accruing on the Property, except for taxes or assessments that are in good faith dispute and that Owner is diligently challenging; provided that upon final discharge of any such challenge, Owner shall pay the disputed amount promptly. During the pendency of any such challenge, Owner shall, within 10 days following Investor's written demand therefor, provide Investor adequate proof of funds sufficient to satisfy such taxes and assessments in the event Owner's challenge is unsuccessful. Owner shall provide Investor with proof of payment of taxes or assessments upon request. Owner shall not apply for any deferral of taxes or assessments accruing on the Property or any deferral available to senior citizens, if applicable. If Owner fails to pay any taxes or assessments other than those in good faith dispute, Investor, in its Permitted Discretion, may pay such taxes or assessments at Owner's expense as Protective Advances.

**(b) Tax Benefits.** Owner shall be entitled to the full benefit of any and all tax advantages arising in relation to the Property, including, without limitation, all available deductions for taxes and mortgage interest paid by Owner. **Investor does not provide tax advice and makes no representations as to the tax advantages or disadvantages which may accrue to Owner in connection with the Property or the Unison HomeBuyer Agreement.**

**8.11 Protective Advances.**

**(a)** If Owner fails to take action to protect the Property and Investor's Rights, Investor may take such action and pay such money as Investor deems appropriate in its Permitted Discretion, upon 10 days' written notice to Owner, to correct Owner's failure including, without limitation: the placement of insurance; the payment of Appraisals or for inspections of the Property; the payment of taxes, assessments, levies, liabilities, obligations and other charges of every nature on the Property; the making of necessary repairs; the cure of any defaulted loans; or the removal of a receiver appointed for the Property. All such amounts advanced by Investor (including, without limitation, Attorneys' Fees incurred in litigation or arbitration with parties other than Owner) shall be deemed "**Protective Advances**." Prior notice from Investor is not required if the Unison HomeBuyer Agreement expressly so provides, or when Investor, in its Permitted Discretion, determines that prompt action is necessary in order to protect the Property and Investor's Rights. Owner and Investor agree that Investor shall incur no liability for its election not to take any action authorized under this **Section 8.11(a)**.

**(b) Reimbursement.** Investor may, in its Permitted Discretion, demand prompt reimbursement for any and all Protective Advances. Owner shall reimburse Investor no later than 10 days after demand. Protective Advances shall bear interest at the rate of one and one-half percent (1½%) per month, subject to applicable law, from the date of demand until paid in full. These charges are intended to be a reasonable liquidated estimate of those sums which Investor could be obliged to obtain and expend in the event appropriate corrective action(s) are not taken to protect the Property or Investor's Rights, which sums and costs are not readily ascertainable, and will be difficult to predict or calculate.

**8.12 Asset Administration Fees.** Unless prohibited by applicable law, Owner will pay all **Asset Administration Fees** necessary to defray costs and expenses to the **Asset Administrator** in accordance with the **Asset Administration Fee Schedule** (attached as Exhibit C hereto and as such schedule is amended and made available by Investor from time to time). Asset Administration Fees shall include, without limitation, fees for: **(a)** processing subordinations; **(b)** processing changes in title or ownership;



© 2016, Unison

**(c)** processing reconveyance of the Option and the Unison HomeBuyer Agreement or a Special Termination; **(d)** processing Protective Advances; **(e)** administering Owner Events Of Default; and **(f)** paying and reimbursing such reasonable, customary, bona fide fees and out-of-pocket costs as are actually charged to Investor by Investor's Asset Administrator or by other third parties relating to any of the foregoing (including, for example, title and escrow charges, recording fees and Attorney's Fees).

**8.13 Notices; Additional Information.**

**(a)** Owner, Owner's Estate, or Owner's representative shall immediately provide Investor with notice of any event that may have a material effect upon the Property, the value of the Property, or Investor's ability to exercise any of Investor's Rights hereunder, including, without limitation: **(i)** Owner's failure to meet any condition or covenant set forth in the Unison HomeBuyer Agreement; **(ii)** the death or divorce of any Owner (or of any Trustee or Trustor, if the Property is held in a Revocable Trust); **(iii)** Owner's decision to market, sell, or transfer the Property or any interest in the Property; **(iv)** the discovery of any lien or adverse possessory interest in the Property not previously disclosed in writing to Investor, whether or not recorded or recordable; **(v)** the filing of any bankruptcy by or against Owner (or any Trustee or Trustor, if the Property is held in a Revocable Trust); **(vi)** any material damage or injury to the Property; **(vii)** Owner's receipt of any notice of condemnation; **(viii)** Owner's receipt of any solicited or unsolicited written offer to purchase the Property; **(ix)** a representation or warranty made under the Unison HomeBuyer Agreement becomes inaccurate or untrue; **(x)** any new Non-Owner Occupant as yet unidentified to Investor commences to occupy the Property using the form attached hereto as Exhibit B; or **(xi)** the occurrence of any other event that might have a material adverse effect on the Property, the value of the Property, Owner's interest in the Property, or Investor's Rights under the Unison HomeBuyer Agreement.

**(b) Additional Information.** Owner will provide to Investor such reports and information available to Owner concerning the Property and any modifications to the Property as Investor may reasonably request, and will promptly complete and return any Property questionnaire or similar form that Investor provides to Owner from time to time. If Owner fails to complete or return any such Property survey or certification within the time frame requested by Investor, Owner shall pay for any Property inspection, appraisal or other report that Investor obtains in order to collect the information that would have been provided therein. If Owner fails to pay any such amounts, Investor, in its Permitted Discretion, may make any and all such payments as Protective Advances.

**8.14 Reserved.**

**8.15 Right to Disclose Certain Information.** Subject to applicable laws, Investor may share certain personal and financial information with regard to the Unison HomeBuyer Agreement with affiliates, subsidiaries, investors, assignees and Persons with which it intends to conduct business, including, without limitation, the address and general location of the Property, appraisal reports and other valuations of the Property, and the financial terms of the Unison HomeBuyer Agreement.

**8.16 Insurance.**

**(a) General Coverage Requirements.** Owner shall maintain at Owner's expense: **(i)** insurance on the Property against fire and other hazards included in the special form (HO-3) policy (and similar successor forms) with only those exclusions customarily associated with special form policies, and exceptions to those exclusions for ensuing loss, as well as insurance against any other hazards, including flood hazards, for which Investor may from time to time reasonably require insurance and which insurance is common for similar properties in similar locations; and **(ii)** liability insurance on the Property against such risks and in such amounts as are reasonable for similar properties in similar locations. Such insurance may be obtained from any insurance company reasonably acceptable to Investor and shall be in amounts and include terms (including deductible levels) as Investor may from time to time reasonably



© 2016, Unison 

require. Currently, Investor requires hazard insurance in an amount equal to the current replacement cost of the improvements on the Property, including law and ordinance coverage (which amounts shall be increased not less frequently than annually as the replacement cost of the improvements increases). Investor shall be named as an additional named insured or as otherwise directed by Investor under all hazard and liability insurance policies obtained by Owner, whether or not such policies are required by Investor.

**(b) <u>Copies And Proceeds.</u>** Copies of all insurance policies shall be furnished to Investor promptly upon issuance, and Owner shall provide Investor with proof of coverage upon request. All proceeds of such policies shall be subject to the provisions of this **Section 8.16**.

**(c) <u>Failure To Maintain.</u>** If Owner fails to maintain or obtain the insurance coverage required by this **Section 8.16**, Investor, at Owner's expense, may, but is not obligated to, obtain such coverage on the Property as Investor, in its Permitted Discretion, may deem necessary and appropriate to protect Investor's Rights. All such expenses paid by Investor shall be deemed to be Protective Advances. Owner acknowledges that the cost of the insurance coverage so obtained might significantly exceed the cost of insurance that Owner could have obtained and may not protect Owner or cover Owner's personal property to the same extent as any policy Owner might have had or could have obtained.

**(d) <u>Owner To Cooperate.</u>** Owner agrees to allow Investor to cooperate with Owner in the pursuit, settlement, and adjustment of any losses under any hazard and liability policies obtained by Owner, and expressly authorizes Investor to communicate directly with all such insurance companies for the purposes of ensuring the maintenance of policies, the coverage and the reimbursement of losses thereunder.

**(e) <u>Property Destruction Or Damage.</u>** Subject to Owner's obligations and the requirements in connection with the Senior Lien:

> **(i) <u>Repair and Restoration.</u>** Insurance proceeds shall be applied as follows (whether the underlying insurance is required by Investor or not): if the Property is destroyed or damaged in any material manner, any and all insurance proceeds shall be applied to restore or repair the Property to at least the same condition and characteristics as of the time immediately preceding such destruction or damage, subject to all applicable local ordinances; provided that Investor shall have the right to prior review of any restoration or repair plans and to determine, in good faith and in the exercise of its reasonable discretion: **(A)** whether the restoration or repair plans are economically feasible; and **(B)** if not, to disapprove such restoration or repair plans.
>
> **(ii)** During any repair or restoration, to ensure that the work is performed to Investor's satisfaction, Investor shall have the right to hold any and all insurance proceeds and release such funds to the Person or Persons performing the repair and restoration work in one or more progress payments as the work is completed. Owner is responsible to assure that any repair or restoration work is properly completed and performed in an adequate and workman-like manner, and in no way impairs or threatens to impair the structural integrity, habitability or value of the Property. To the extent any governmental approvals or permits are required for such repair or restoration work, Owner is responsible and shall assure that such governmental approvals or permits are obtained. Unless applicable law requires interest to be paid on such insurance proceeds or a written agreement to that effect is made by the parties, Investor shall not be required to pay Owner any interest or earnings on such proceeds. If the Property is repaired, it must be restored to at least the same condition and characteristics as of the time immediately preceding such destruction or damage, subject to all applicable local ordinances; and, in any event, no less favorable a condition than set forth in **Section 8.2** above, regardless of whether the insurance proceeds are sufficient to accomplish such repair. Investor shall have no responsibility or obligation to pay any amount in connection with the restoration or repair of the Property, even if



© 2016, Unison

the insurance proceeds are insufficient to complete the restoration or repair, in which case Owner shall be responsible for any shortfall.

**(iii)** **Allocation Where Repair Not Feasible.** If any loss occurs in connection with the Property, and restoration or repair is not economically feasible, the value of the Property as it existed immediately prior to the destruction or damage shall be determined by Appraisal, or if valuing the Property by Appraisal is not possible due to the destruction or damage, by some other reasonable, customary and appropriate process based on an expert third party opinion obtained by Investor. Any and all insurance proceeds, whether or not the underlying insurance was required by Investor, will be allocated in the following order:

**(A)** to payment (or reimbursement) of reasonable costs and expenses (including, without limitation, Attorneys' Fees that have been approved by Investor in its Permitted Discretion) reasonably incurred by Owner and/or Investor in collecting and contesting with the insurers the payments under the relevant insurance policies;

**(B)** to payment of all Senior Loans, which payment may result in the discharge of the related Senior Liens;

**(C)** to Investor, in an amount equivalent to the Investor Interest as it would have been calculated had Investor exercised its Option immediately before the loss; and

**(D)** to Owner, the balance of the proceeds.

(f) **Special Measure Of Damages Where Owner Has Failed To Insure.** Owner and Investor agree that, in the event Owner fails to maintain insurance in amounts required by Investor pursuant to this **Section 8.16**, and/or any insurance claim is denied due to Owner's action or inaction, there may be added economic burden and risk imposed on Investor, and resulting damages may be uncertain, depend on many factors, and be extremely difficult to ascertain. In the event of loss to Investor resulting directly from Owner's failure to maintain insurance or obtain a claim, Owner and Investor therefore agree that Investor shall be entitled to a special measure of liquidated damages ("**Special Damages For Failure To Insure**") in the amount of the Investor Interest as it would have been calculated had Investor exercised its Option immediately before the loss, but without credit of the Unison Purchase Price Balance to Owner.

**8.17 Condemnation.**

**(a) Total Condemnation Or Partial Condemnation When The Option Has Been Exercised.** If the Property is condemned, in whole, or in part when the Option has been exercised, all condemnation proceeds net of reasonable costs and expenses (including, without limitation, Attorneys' Fees approved by Investor) incurred by Owner and/or Investor in collecting and contesting the condemnation proceeds ("**Net Condemnation Proceeds**") shall be allocated in the following order:

**(i)** to payment of all Senior Loans, which payment may result in the discharge of the related Senior Liens;

**(ii)** to Investor, an amount equivalent to the Investor Interest as it would have been calculated immediately prior to the condemnation; and

**(iii)** to Owner, the balance of the proceeds.

**(b) Partial Condemnation When The Option Has Not Been Exercised.** If the Property is condemned in part, and if the Option has not been exercised, the following provisions shall apply:



© 2016, Unison

**(i)** The Net Condemnation Proceeds shall be used, first, to pay all Senior Loans, provided that such payment may result in the discharge of the related Senior Liens;

**(ii)** Any remaining Net Condemnation Proceeds shall be distributed as follows:

**(A)** First, to Investor, an amount equal to the total of **(1)** any unreimbursed Protective Advances, including any associated unpaid interest and other fees and charges plus **(2)** any unpaid Asset Administration Fees;

**(B)** Second, to Owner, the balance of the proceeds; and

**(iii)** For all remaining calculations to be made under the Unison HomeBuyer Agreement in connection with any Option exercise, including an Orderly Sale, the Unison Purchase Price Balance shall be reduced by the Net Condemnation Proceeds multiplied by the Investor Percentage (**"Investor Condemnation Credit"**).

**(c) Reservation of Rights.** In the case of a partial condemnation, Investor shall retain its Investor Rights with respect to any Property that has not been condemned.

**8.18 Environmental Matters.**

**(a) Environmental Prohibitions.** Owner shall not, and shall not allow others to, perform any activities upon, or use or occupy the Property, or any portion of the Property, in any manner that violates any state, federal or local law or regulation, including, without limitation, those relating to the generation, handling, manufacturing, treatment, storage, use, transportation, spillage, leakage, dumping, discharge or disposal (accidental or intentional) of any toxic or hazardous substances, materials or wastes, including, but not limited to hydrocarbons, asbestos, or any other substance whose nature or quantity, use, manufacture, disposal, or effect, renders it subject to public regulation, investigation, remediation or removal as potentially injurious to the environment, animals or the public health or welfare (**"Hazardous Materials"**).

**(b) Environmental Representations.** Owner represents and warrants to Investor, that Owner has no knowledge of or information concerning any violation or claim of violation of laws or regulations relating to the generation, handling, manufacturing, treatment, storage, use, transportation, spillage, leakage, dumping, discharge or disposal (whether accidental or intentional) of any Hazardous Materials in connection with the Property. Owner has no knowledge of any Hazardous Materials on, in, or in the vicinity of the Property.

**(c) Environmental Indemnity.** Owner will indemnify and hold Investor harmless from and against any and all claims, damages, liabilities, actions and expenses (including, without limitation, Attorneys' Fees) of every kind arising out of or relating to: **(i)** Owner's breach of this **Section 8.18** or **(ii)** the presence of any Hazardous Materials on, in, or in the vicinity of the Property.

## ARTICLE NINE
## MISCELLANEOUS PROVISIONS

**9.1 Indemnification By Owner.** Owner hereby agrees to indemnify and hold Investor harmless from, and against, any and all claims, damages, liabilities, actions and expenses (including, without limitation, Attorneys' Fees) of every kind arising out of or relating to: **(a)** a breach of any of Owner's covenants, representations or warranties under the Unison HomeBuyer Agreement; **(b)** any act or omission by Owner or Owner's agents; or **(c)** the Property.



© 2016, Unison 

**9.2 Covenants To Run With Land.** The Unison HomeBuyer Option Agreement, Unison HomeBuyer Covenant Agreement, and the other provisions of the Unison HomeBuyer Agreement are deemed to be covenants running with the land as reflected in the Unison HomeBuyer Recorded Memorandum. The interpretation of the phrase "Covenants running with the land" shall be within the meaning of the applicable law of the state where the Property is located so as to give it the broadest possible application.

**9.3 Relationship. Investor shall not be deemed a partner, joint venturer, trustee, lender or fiduciary with, or of, Owner. Owner shall not be permitted to execute any document or enter into any agreement on behalf of Investor, nor shall Owner be permitted to make any representation on behalf of Investor or to represent Owner as the agent or representative or partner of Investor. The Option is intended to and shall be treated for all purposes (including, without limitation, tax purposes) as an option to purchase an undivided percentage interest in and to the Property, and not as a purchase (unless and until Option exercise), loan, or joint venture. Owner expressly waives any claims against any of the Investor's agents, assignees, affiliates, employees or funding sources not a signatory hereto.**

**9.4 Multiple Owners and Revocable Trusts.**

**(a) Multiple Owners.** If Owner is more than one Person: **(i)** the Transaction Documents must be signed by each such Owner; **(ii)** all such multiple Owners shall be jointly and severally liable for Owner's liabilities and obligations under the Transaction Documents; **(iii)** notice required to be given by, or to, an Owner shall be deemed adequately given if given by, or to, any of Owners using the contact information set forth in the Unison HomeBuyer Option Agreement; and **(iv)** Investor may treat any notice received from any one Owner as notice from all Owners.

**(b) Revocable Trusts.** If Owner is the Trustee of a Revocable Trust: **(i)** all Trustees and all Trustors must sign the Unison HomeBuyer Agreement Transaction Documents both in their capacities as individuals and as Trustees and/or Trustors, provided that any Trustee who is also a Trustor need only sign the Unison HomeBuyer Agreement Transaction Documents once for them to be binding on such Person both as Trustee and as Trustor; **(ii)** each Trustee and Trustor who signs the Unison HomeBuyer Agreement Transaction Documents hereby represents and warrants that all Trustees and Trustors have been disclosed to Investor; **(iii)** all rights and powers specified for, and all actions required of, Owner in the Unison HomeBuyer Agreement that are exercised by a Trustee shall be deemed approved and exercised by all Trustees unanimously; **(iv)** all Trustees and all Trustors, in their capacities as individuals, shall be jointly and severally liable with Owner for Owner's liabilities and obligations under the Unison HomeBuyer Agreement; **(v)** all representations and warranties by Owner in the Unison HomeBuyer Agreement are made by all Trustees on behalf of the Revocable Trust and by all Trustees and all Trustors in their capacities as individuals; **(vi)** notice required to be given by, or to, an Owner shall be deemed adequately given if given by, or to, any of the Trustees using the contact information set forth in the Unison HomeBuyer Option Agreement; and **(vii)** Investor may treat any notice received from any one Trustee as notice from all Trustees and from Owner.

**(c) Owners To Be Natural Persons.** Each Owner under the Unison HomeBuyer Agreement must be a Natural Person. No entity, including, without limitation, corporations, limited liability companies, partnerships, or joint ventures, may be an Owner hereunder; provided, however, that an Owner or Owners who are Natural Persons may hold title to the Property in a Revocable Trust, provided that the requirements for Revocable Trusts set forth in **Section 9.4(b)** above are satisfied.

**9.5 Delegation of Duties.** Investor may execute any of its duties under the Unison HomeBuyer Agreement by or through agents, Asset Administrators, employees or attorneys-in-fact; shall be entitled to advice of counsel concerning all matters pertaining to such duties; and any actions taken on advice of counsel shall be deemed taken in good faith. Investor shall not be responsible for the negligence or



© 2016, Unison 

misconduct of any agent, Asset Administrator, employee, or attorney-in-fact that it selects as long as Investor's selection was made without gross negligence or willful misconduct.

**9.6 Successors and Assignees.** The Unison HomeBuyer Agreement shall be binding on Owner's and Investor's successors and assignees, but may not be assigned contrary to the following express provisions:

(a) **Assignment by Investor.** **(i)** Investor may assign, participate, hypothecate or sell, in whole or in part, Investor's right and title to, and interest in, the Unison HomeBuyer Agreement at any time and to any Person without prior notice to, or consent of Owner. In connection with any assignment, Investor may in its Permitted Discretion disclose any and all documents and information in its possession relating to Owner and the Property, subject to its assignee's agreement to continue to observe Investor's policies regarding privacy and disclosure of personal and financial information and applicable privacy laws, or provide disclosure to Owner and an opportunity for Owner to opt in or out in compliance with applicable law. Upon such assignment, Investor's (or any future) assignee shall automatically be delegated all the duties, and assume all the rights and remedies of, Investor under the Unison HomeBuyer Agreement, including the Unison HomeBuyer Security Instrument. Investor and Owner shall execute and deliver in recordable form, if requested, such other documents as are appropriate to reflect the assignment of the Unison HomeBuyer Agreement. Investor and Owner agree to cooperate with such assignee and execute such additional documents as may be necessary to insure assignee's interest in the Property. Investor shall notify Owner no later than 60 days after the effective date of any such assignment.

**(ii)** Owner acknowledges and consents to any assignment whereby the Asset Administrator's responsibilities, including, but not limited to, the right to enforce the Unison HomeBuyer Agreement and the other Transaction Documents, are assigned and/or delegated to an entity other than Unison Agreement Corp.

**(b) Owner Assignments.** Absent Investor's prior written consent, which may be withheld in Investor's Permitted Discretion, Owner may not assign or otherwise transfer the Unison HomeBuyer Agreement or the other Transaction Documents; except that Investor will generally not unreasonably withhold consent to an assignment: **(i)** between Owner and the Trustor of a Revocable Trust; or **(ii)** to Owner's spouse who acquires an undivided interest in the Property provided that in each case the assignee (including any Trustor, if applicable): **(A)** executes the Unison HomeBuyer Agreement Transaction Documents, including a recordable addendum to both the Unison HomeBuyer Recorded Memorandum and the Unison HomeBuyer Security Instrument, **(B)** executes a written notice of assignment ("**Exempted Owner Assignment**"), and **(C)** successfully completes the then-current education process required of Unison HomeBuyer Agreement applicants. In the event of an Exempted Owner Assignment to the Trustee(s) of a Revocable Trust, the original Owner (i.e., the Trustor), jointly and severally, shall continue to remain liable under the Unison HomeBuyer Agreement.

**9.7 Survival.** The following provisions, without limitation, shall survive the Expiration Date or any other termination of the Unison HomeBuyer Agreement: **(a)** the obligations relating to a Solicited Sale Value under **Section 6.2**; **(b)** the indemnification provisions of **Section 9.1**; **(c)** obligations to pay any and all Protective Advances and Asset Administration Fees; **(d)** obligations to remove any liens on the Property and pay any Sales Commissions, Closing Costs and or other expenses properly chargeable to Owner in connection with a Third Party Sale or an Orderly Sale to the extent not discharged through Escrow; **(e)** the obligation to pay any Appraisal Expenses; **(f)** any and all covenants, representations and warranties of Owner; and **(g)** any and all other provisions which are required by their terms to be enforceable following expiration or termination, including, without limitation, provisions prescribing monetary remedies, fees, costs and expenses owed by Owner in connection with any Owner Event Of Default hereunder.

**9.8 Attorneys' Fees.** If a lawsuit or arbitration proceeding (other than an arbitration under **Section 8.6** above), is commenced in connection or arising out of the Option or the Unison HomeBuyer Agreement or in connection with the interpretation, enforcement or protection of Investor's Rights, the prevailing party,



© 2016, Unison

as determined by the court or arbitrator, shall be entitled to recover court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of Investor's in-house counsel that are directly attributable to the specific matters on which they prevailed (collectively "Attorneys' Fees"). Attorneys' Fees shall include, without limitation, Attorneys' Fees and costs incurred in any state, federal, appellate, or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to the Option or the Unison HomeBuyer Agreement, to the interpretation or enforcement of the parties' rights thereunder, or to the Property, and shall not for any purpose be treated as compensatory damages.

**9.9 Injunction.** Notwithstanding anything to the contrary in the Unison HomeBuyer Agreement or otherwise, if Investor is stayed or enjoined from exercising the Option, commencing or initiating Option exercise or purchase procedures hereunder (whether as a result of Owner's bankruptcy or otherwise), or enforcing any other of Investor's Rights under the Unison HomeBuyer Agreement, Investor's Rights shall not expire, and any deadline or notice period prescribed in the Unison HomeBuyer Agreement which Investor is prevented or prohibited from observing by operation of law or by court order, shall automatically be stayed for the duration of such stay, injunction or legal prohibition.

**9.10 Choice of Law; Venue.** The Unison HomeBuyer Agreement shall be determined under, governed by, and construed in accordance with Minnesota law, without regard to its conflict of law principles, unless the law of the jurisdiction where the property is located mandatorily governs, in which case the laws of such jurisdiction shall apply. The parties agree that all actions or proceedings arising in connection with the Unison HomeBuyer Agreement shall be litigated or arbitrated only in the state and federal courts located in or having jurisdiction in the city or county where the Property is located. Owner waives any right to assert the doctrine of forum non conveniens or to object to such venue.

**9.11 Further Assurances.** The parties agree, from time to time, as and when requested by any other party to the Unison HomeBuyer Agreement or its successors or assignees to execute and deliver, or cause to be executed and delivered, all such instruments; and take, or cause to be taken, all such further or other actions as may be reasonably necessary or desirable in order to implement the provisions and to effect the intent and purposes of the Unison HomeBuyer Agreement. Such actions shall include, without limitation, all actions necessary by the parties to correct any error or inaccuracy in the Unison HomeBuyer Agreement Transaction Documents or any other document related to the Unison HomeBuyer Agreement, to ensure that such documents reflect the true and correct terms upon which the parties agreed to enter into the Unison HomeBuyer Agreement, and/or to replace any missing or misplaced documentation, or to confirm and restate any authorities granted hereunder to the extent such authority is impacted by a change in any law, rule or regulation impacting its terms on the date hereof, to the fullest extent permissible under such changed, law, rule or regulation.

**9.12 Reliance by Investor.** Investor shall be entitled to rely, and shall be fully protected in relying, upon any writing, resolution, notice, consent, certificate, affidavit, letter, telegram, telefacsimile or other electronic method of transmission, telex or telephone message, statement or other document or conversation believed by it to be genuine and correct and to have been signed, sent, or made by the proper Person or Persons, and upon advice and statements of legal counsel, independent accountants and other experts selected by Investor, and counsel to Owner. Investor shall in all cases be fully indemnified by Owner under the Unison HomeBuyer Agreement where Investor's action, or refusal to act, is in response to a request of or the consent of the Owner, and such request and any action taken or failure to act by Investor pursuant thereto shall be binding upon the Owner. The transmission or delivery of written materials to the Investor shall constitute a representation and warranty by Owner as to the accuracy and completeness of the information contained therein.

**9.13 Severability; Waivers.** Each provision of the Unison HomeBuyer Agreement shall be severable from every other provision for the purpose of determining the legal enforceability of any provision. No waiver by Investor of any of its rights or remedies in connection with the Unison HomeBuyer Agreement

shall be effective unless such waiver is in writing and signed by Investor and Owner, and then any such waiver or consent shall be effective only in the specific instance and for the specific purpose for which given. No delay or waiver by Investor in exercising any right shall be construed as continuing, as a bar to, or as a waiver or release of, any subsequent right, remedy or recourse. To the extent that enforcement of any provision, or exercise of any right, under the Unison HomeBuyer Agreement is held to be invalid or stayed or enjoined by a court of competent jurisdiction, then such provision shall be considered separately and apart from the remaining provisions, and any and all other remaining provisions shall continue to be fully enforceable under applicable law. To the extent that enforcement of any provision under the Unison HomeBuyer Agreement, is deemed to violate a subsequently issued state or federal law, rule or regulation, then the parties agree that such provision shall be enforced exclusively with reference to principles of equity, and that any and all other remaining provisions shall continue to be fully enforceable in equity and under law. No waiver by Investor on any occasion shall affect or diminish Investor's rights thereafter to require strict performance by Owner of any provision of the Unison HomeBuyer Agreement. Investor in its Permitted Discretion, may at any time, unilaterally waive the right to demand, in whole or in part, the future performance of Owner's obligations under the Unison HomeBuyer Agreement, and reserves the right in its Permitted Discretion, at any time during the Term, to cancel the Option by notice in writing to Owner, or to rescind its election to exercise the Option, in which case any such prior election by Investor shall be deemed void *ab initio*.

**9.14 Notices.** Any notice, demand or request required under the Unison HomeBuyer Agreement, unless telephone contact is specifically contemplated, shall be deemed given in writing by delivery to either the mailing address set forth in the Unison HomeBuyer Option Agreement by overnight delivery by a nationally recognized overnight courier service, and may also be given to Owner by electronic mail transmission to the electronic mail address specified for Owner in the Unison HomeBuyer Option Agreement. Any such notice, demand or request shall be deemed received on the Business Day either immediately following deposit with the overnight courier service, or the date of electronically stored record of e-mail transmission; provided, however, that the following notices shall not be deemed received by Investor from Owner until written confirmation of receipt made by Investor to Owner: notices of default and notices of sale in connection with secured liens on the Property; notices of delinquency in tax or insurance payments on the Property; notices of the death of an Owner; and notices of the commencement of legal or other action concerning the Property, or of bankruptcy proceedings by Owner. Each party shall have the right to change the place to which notice shall be sent or delivered or to specify one additional address to which copies of notices shall be sent, in either case by similar notice sent or delivered in the same manner to the other party.

**9.15 Entire Agreement; Amendment.** Schedule A, and Exhibits A, B, and C below, are incorporated herein by this reference. The Transaction Documents and the other written agreements made by and between Owner and Investor as of the Effective Date together constitute the entire agreement between the parties pertaining to the subject matter contained in them. Except as expressly agreed in writing, all prior agreements, understandings, representations, warranties, statements, and negotiations between the parties, if any, whether oral, electronic or written, relating to the Property, the Option, the Unison HomeBuyer Agreement, the other Transaction Documents, and the transaction which is the subject matter thereof, including but not limited to any and all Conditional Approval Packages, terms sheets and earlier drafts and versions of other documents and agreements, are superseded and merged into the Unison HomeBuyer Agreement. No supplement, modification or amendment of the Unison HomeBuyer Agreement shall be binding unless in writing and executed by the party against whom enforcement is sought.

**9.16 Headings.** Article and Section headings are for reference only and shall not affect the interpretation or meaning of any provisions of the Unison HomeBuyer Agreement.

**9.17 Third-Party Beneficiaries.** The Unison HomeBuyer Agreement is entered into for the protection and benefit of Investor and Owner and their respective permitted successors, affiliates and assignees with



© 2016, Unison

regard to their respective present and contingent ownership interests in the Property. No other Person shall have any rights or causes of action under the Unison HomeBuyer Agreement.

**9.18 Days of the Week; Time Periods.** Whenever the word "day(s)" is used in any of the Transaction Documents, it shall refer to calendar day(s) unless it is expressly identified as being "**Business Day(s)**". When any date referred to falls on a day of the week that is other than a Business Day, then such date shall, for all purposes (unless otherwise required by statute), be deemed to be the Business Day immediately following such date. Whenever an anniversary date of the Effective Date is applied, its applicable expiration shall be at 11:59 p.m., Pacific Time, on the day immediately preceding the anniversary date.

**9.19 Counterparts; Electronic Signatures.** The Unison HomeBuyer Agreement Transaction Documents may be executed in counterparts, each of which when so executed shall be deemed an original, but all such counterparts shall constitute one and the same agreement. A signed copy of any of the Transaction Documents which is transmitted by a party to another party via facsimile or by electronic means shall be binding on the signatory to that copy.

**9.20 WAIVER OF JURY TRIAL. TO THE FULLEST EXTENT PERMITTED BY LAW, INVESTOR AND OWNER HEREBY VOLUNTARILY, UNCONDITIONALLY AND IRREVOCABLY WAIVE TRIAL BY JURY UNDER ALL CIRCUMSTANCES WHETHER IN ANY LITIGATION OR PROCEEDING IN A STATE OR FEDERAL COURT RELATED TO, OR ARISING OUT OF, THE TRANSACTION DOCUMENTS OR THE OBLIGATIONS OR TRANSACTIONS CONTEMPLATED BY THE UNISON HOMEBUYER AGREEMENT, INCLUDING, WITHOUT LIMITATION, ALL CLAIMS OR DISPUTES HOWEVER ARISING (INCLUDING TORT CLAIMS AND CLAIMS FOR BREACH OF DUTY) BETWEEN INVESTOR AND OWNER.**



© 2016, Unison

## ARTICLE TEN
## CALCULATIONS

**10.1**

**(a)** The "Investor Proceeds" under this Unison HomeBuyer Agreement shall be defined and calculated as follows:

Ending Agreed Value *multiplied by* Investor Percentage

*minus* the Unison Purchase Price Balance.

**(b)** The "Unpaid Owner Obligations" under this Unison HomeBuyer Agreement shall be defined and calculated as the sum of any and all monetary amounts owed to Investor as unreimbursed Protective Advances, unpaid interest, fees and other charges associated with Protective Advances; and unpaid Asset Administration Fees.

**(c)** The "Investor Interest" under this Unison HomeBuyer Agreement shall be defined and calculated as the Investor Proceeds, if any, *plus* the Unpaid Owner Obligations, if any.

**(d)** Following Investor's exercise of the Option, Owner may terminate Investor's Option to purchase an undivided percentage interest in and to the Property by tendering to Investor the amount (if any) of the Investor Interest as calculated herein.

**10.2** In any calculation of the Investor Proceeds or Investor Interest made in connection with **(a)** circumstances of fraud, bad faith, or material misrepresentation or nondisclosure by Owner; **(b)** any transfer or sale, or attempted transfer or sale, of the Property by Owner in violation of the terms of the Unison HomeBuyer Agreement, or **(c)** other circumstances of prolonged, material and uncured default by Owner under the terms of the Unison HomeBuyer Agreement the Unison Purchase Price Balance may, in Investor's Permitted Discretion, be reduced by an amount equal to ten percent (10%) of the Unison Down Payment.

**10.3** The Ending Agreed Value of the Property under the Unison HomeBuyer Agreement is calculated as:

**Base Ending Agreed Value** (as set forth in **Section 10.4** below)

*minus any* Remodeling Adjustment*

*plus any* Deferred Maintenance Adjustment

*If there is a Negative Remodeling Adjustment, the absolute value of that number is added rather than subtracted.

**10.4 Base Ending Agreed Values.** The "Base Ending Agreed Values" applicable under the terms of the Unison HomeBuyer Agreement are as follows:

**(a)** In any Option exercise on Permitted Sale of the Property following the third year anniversary of the Effective Date: the Effective Sale Price.

**(b)** In any Option exercise on Permitted Sale of the Property prior to the third year anniversary of the Effective Date: the greater of the Effective Sale Price or the Original Agreed Value.



© 2016, Unison 

**(c)** In any Option exercise on sale of the Property which is not a Permitted Sale, or is a Sale By Owner Transaction, an Intrafamily Transaction, a sale to a buyer that is not a Natural Person, or a sale with respect to which Investor has elected to apply its rights under Section 3.5 above: either the Effective Sale Price, or an Appraised Value of the Property, in Investor's Permitted Discretion.

**(d)** In any Option exercise at Term: the Appraised Value of the Property.

**(e)** In any Option exercise upon death of the Last Surviving Owner wherein the Property is not sold to a Third Party Buyer in a Permitted Sale: the Appraised Value of the Property.

**(f)** Following any Owner Event Of Default which is not remedied by an Orderly Sale, or in any calculation of an Investor Bid Amount in connection with a foreclosure sale of the Property: the greatest of the **(i)** Original Agreed Value, or **(ii)** the highest Appraised Value of the Property calculated between the date of the first Owner Event Of Default through the date of recording of Investor's release and reconveyance of the Option and the Unison HomeBuyer Agreement Transaction Documents.

**(g)** In any allocation of insurance proceeds: the Appraised Value of the Property as it existed immediately prior to the destruction or damage, or if valuing the Property by Appraisal is not possible due to the destruction or damage, the Property value immediately prior to the destruction or damage as determined by some other reasonable, customary and appropriate process based on an expert third party opinion obtained by Investor.

**(h)** In any total condemnation of the Property, or partial condemnation in which the Option has been exercised: the greater of: the Net Condemnation Proceeds under **Section 8.17**, or the Appraised Value of the Property as it existed immediately prior to the condemnation, or if valuing the Property by Appraisal is not possible due to the condemnation, the Property value immediately prior to the condemnation as determined by some other reasonable, customary and appropriate process based on an expert third party opinion obtained by Investor.

**(i)** In any Special Termination: the greater of the Appraised Value of the Property at the time of Special Termination, or the Solicited Sale Value.

**(j)** In any Orderly Sale, any one of the following, in Investor's Permitted Discretion: **(i)** the Effective Sale Price; **(ii)** the Original Agreed Value; **(iii)** the highest Appraised Value of the Property calculated between the date of the first Owner Event Of Default through the date of recording of Investor's release and reconveyance of the Option and the Unison HomeBuyer Agreement Transaction Documents; or **(iv)** such other Base Ending Agreed Value as may be agreed by Owner and Investor in writing.

[INTENTIONALLY LEFT BLANK]



© 2016, Unison

**READ THIS DOCUMENT CAREFULLY BEFORE SIGNING IT. EXERCISE OF THE UNISON HOMEBUYER OPTION OR OTHER ENFORCEMENT OF THE TERMS OF THE UNISON HOMEBUYER AGREEMENT MAY RESULT IN THE SALE OF YOUR PROPERTY. ALL PRIOR ORAL, ELECTRONIC AND WRITTEN COMMUNICATIONS AND AGREEMENTS FROM OR WITH INVESTOR AND/OR INVESTOR'S AGENT(S), INCLUDING ALL CORRESPONDENCE, CONDITIONAL APPROVAL PACKAGES, TERM SHEETS, PRINTED MATERIALS, DISCLOSURES, AND THE PROGRAM GUIDE ARE MERGED INTO AND SUPERSEDED AND REPLACED BY THE UNISON HOMEBUYER OPTION AGREEMENT, THIS UNISON HOMEBUYER COVENANT AGREEMENT, THE UNISON HOMEBUYER RECORDED MEMORANDUM, THE UNISON HOMEBUYER SECURITY INSTRUMENT, AND ANY OTHER WRITTEN AGREEMENTS MADE BY AND BETWEEN OWNER AND INVESTOR AS OF THIS EFFECTIVE DATE.**

IN WITNESS WHEREOF, intending to be legally bound, the parties have executed this Unison HomeBuyer Covenant Agreement as of the Effective Date.

**INVESTOR:**

Unison Agreement Corp.

By: [signature]
Daniel Eisenberg

Title: Vice President

Date Signed: 1/8/2019

**OWNER:**

By: [signature]
Keith B. Allen

Date Signed: 1-9-19

By: [signature]
Dawn M. Allen

Date Signed: 1-9-19

By: ____________________
Date Signed: ____________________

By: ____________________

Date Signed: ____________________



© 2016, Unison

## SCHEDULE A

## DEFINITIONS

As used in the Unison HomeBuyer Agreement, the following terms shall have the meanings specified below:

**Actual Value.** Is defined in **Section 8.3(b)(ii)(A).**

**Appraisal.** The process of determining value of the property by Appraisal(s) as described in **Section 8.5**, and any appraisal of the Property under **Section 8.5**.

**Appraisal Expenses.** All fees and expenses owed to third parties (but excluding Attorneys' Fees) in connection with an appraisal or other valuation of the Property.

**Appraised Value.** The value of the Property determined in accordance with the procedures set forth in **Section 8.5.**

**Approved Subsequent Lien.** A lien upon the Property securing an Approved Subsequent Loan that is perfected after the Owner Property Purchase.

**Approved Subsequent Loan.** A loan or other obligation secured by the Property that is not prohibited under **Section 8.9(a)(iii)** of the Unison HomeBuyer Covenant Agreement or otherwise approved in writing by Investor, as so secured, after the Owner Property Purchase.

**Asset Administration Fees.** Fees, costs and charges of the type further described in **Section 8.12**, which Asset Administration Fees are designed to compensate the Asset Administrator for the time, effort, costs and expenses incurred in responding to requests from Owner or Events Of Default by Owner under the Unison HomeBuyer Agreement or in paying and reimbursing customary, reasonable, bona fide out of pocket costs charged to Asset Administrator by third parties performing such actions pursuant to the Unison HomeBuyer Agreement.

**Asset Administration Fee Schedule.** A written schedule of regularly imposed fees for certain life events of the Unison HomeBuyer Agreement, a copy of which is provided to Owner in connection with application for, and execution of, a Unison HomeBuyer Agreement.

**Asset Administrator.** The entity responsible for monitoring Owner's compliance with, and discharging Investor's responsibilities under, the Unison HomeBuyer Agreement. The Asset Administrator may be Unison Agreement Corp.

**Attorneys' Fees.** All court and other dispute resolution costs, attorneys' and experts' fees and costs, and fees and disbursements of Investor's in-house counsel that are directly attributable to the specific matters on which a party prevailed. Attorneys' Fees shall include, without limitation, Attorneys' Fees incurred in any state, federal, appellate, or bankruptcy court, and in any bankruptcy case or insolvency proceeding, of any kind in any way related to the Unison HomeBuyer Agreement, Investor's Rights, or to the interpretation or enforcement of the parties' rights under the Unison HomeBuyer Agreement, Investor's Rights or the Property.

**Base Ending Agreed Value.** The Ending Agreed Value of the Property before any Remodeling Adjustment or Deferred Maintenance Adjustment, as set forth in **Section 10.4**.

**Business Day.** Any day other than a Saturday, a Sunday, Good Friday, the day after Thanksgiving, or a day on which commercial banks in New York or California are required or authorized to be closed.

**Closing Costs.** All (a) ordinary and customary costs in connection with the Owner Property Purchase or any subsequent sale or other transfer of the Property or any assignment or exercise of the Option related to such transfer, including, without limitation, recording fees and costs, reconveyance fees, Escrow fees, title insurance fees or fees incurred in obtaining the **Confirmation Of Title** elected by Investor, transfer taxes and documentary transfer taxes, and (b) federal, state or local taxes (excluding income taxes) arising, incurred or owed in connection with (i) Investor's exercise or sale of the Option, (ii) a sale of the Property or a Special Termination (iii) any related closing thereof; or (iv) any related Escrow. However, the term "Closing Costs" shall not include costs that are owed or incurred by a third party other than Investor in connection with the Property Purchase or a sale of the Property to a third party.

**Confirmation Of Title.** Confirmation of good and marketable title in and to the Property in fee simple and free of any liens or encumbrances of whatever character, subject only to the Permitted Encumbrances, to be provided, in Investor's Permitted Discretion, in the form either of a policy of title insurance issued to, or for the benefit of, Investor or Investor's assignee at the



© 2016, Unison 

time that the Unison HomeBuyer Agreement is entered into and insuring Investor's or Investor's assignee's rights under the Unison HomeBuyer Agreement or of a written title report, abstract of title or other title search documentation reflecting, to Investor's satisfaction, confirmation of good and marketable title to Investor's undivided fractional interest in the Property.

**Deferred Maintenance Adjustment.** An amount equal to Investor's commercially reasonable estimate of the dollar amount of any deferred maintenance or diminution in Property value caused by conditions or defects which either were known or should have been known by Owner as of the Effective Date, or which occurred or developed during the Term, as further described in **Section 8.4**, as determined by Investor in connection with any of the computations to be made under the Unison HomeBuyer Agreement.

**Effective Date.** Is defined in the first sentence of the Unison HomeBuyer Option Agreement and **Section 1.1** of the Unison HomeBuyer Covenant Agreement.

**Effective Sale Price.** The monetary amount for which the Property is to be sold or transferred by Owner or Investor, as applicable, to any Third Party Buyer, as adjusted, as set forth below. The Effective Sale Price shall be the sum of all amounts set forth or that would otherwise be set forth in Section 400 of the HUD-1 Form (or any successor form) prepared by an Escrow Holder (which shall include the fair market value of any non-cash consideration received by, or for the benefit of, Owner and/or Investor in connection with the sale of the Property). Investor may elect to review the sales contract, and if Investor, through the exercise of its reasonable discretion, determines that the fair market value of any non-cash consideration is not properly reflected in the aforementioned Section 400, make a good faith reasonable determination of the value of any non-cash consideration to be received by Owner and/or Investor and include it in the calculation of Effective Sale Price. The calculation of the Effective Sale Price shall not include any deduction for any: (i) Closing Costs; (ii) liens on the Property; (iii) outstanding taxes; (iv) Sales Commissions; (v) Appraisal Expenses; (vi) loans secured by the Property; (vii) credits made by Seller to closing costs; and/or (viii) amounts payable to Investor hereunder.

**Ending Agreed Value.** Is defined in **Section 10.3**.

**Escrow.** A transaction settlement, typically consisting of an exchange and disbursement of consideration, costs, and proceeds, and documentation and recording of clear title to the Property, using the services of an Escrow Holder.

**Escrow Holder.** A title company reasonably acceptable to Investor or any neutral third party Escrow agent, settlement agent, title agent or attorney closing firm that closes or settles any transaction contemplated hereunder.

**Event Of Default.** Is defined in **Article Seven**.

**Exempted Owner Assignment.** Is defined in **Section 9.6(b)**.

**Exercise Event.** An event giving rise to the Investor's contractual right to exercise the Option under the Unison HomeBuyer Agreement, including sale or transfer of the Property by Owner, death of the Last Surviving Owner; expiration of the Unison HomeBuyer Agreement Term; material and uncured Event of Default; or acceptance by Owner of an offer of Option exercise and Orderly Sale.

**Expiration Date.** The day immediately preceding the thirtieth (30th) anniversary of the Effective Date, subject to automatic extension under **Sections 3.3, 4.3(b)** and **5.3(b)** of the Unison HomeBuyer Covenant Agreement.

**Hazardous Materials.** Is defined in **Section 8.18**.

**Hypothetical Value.** Is defined in **Section 8.3(b)(ii)(A)**.

**Intrafamily Transaction.** A purchase, sale or transfer of the Property proposed between Owner and any family member of Owner by blood or marital relation.

**Investor.** Is defined in **Section 1** of the Unison HomeBuyer Option Agreement and **Section 1.1** of the Unison HomeBuyer Covenant Agreement.

**Investor Bid Amount.** The liquidated amount of the Investor bid to be made in connection with any foreclosure sale of the Property.

**Investor Condemnation Credit.** Is defined in **Section 8.17(b)**.

**Investor Interest.** The Investor Proceeds (if any) plus Unpaid Owner Obligations (if any).



© 2016, Unison 

**Investor Percentage.** The undivided percentage interest in and to the Property set forth in the Unison HomeBuyer Option Agreement which Investor has the option to purchase and Owner has agreed to sell under the Unison HomeBuyer Agreement.

**Investor Proceeds.** The Ending Agreed Value (as adjusted if applicable), multiplied by the Investor Percentage, minus the Unison Purchase Price Balance.

**Investor's Rights.** All interests and rights that Investor has or may have with regard to the Property (matured or unmatured, contingent or non-contingent, present or prospective) by virtue of the Option, under the Unison HomeBuyer Agreement, or any other document executed by Owner in connection therewith, whether the Option has or has not been exercised.

**Irrevocable Limited Power Of Attorney.** A notarized Irrevocable Limited Power Of Attorney executed by Owner substantially in the form annexed hereto as Exhibit A, empowering Investor (although only a co-owner of the Property) exclusively to market, advertise, sell and transfer title to one hundred percent (100%) of the Property, including Owner's interest therein, if and when Investor and Owner have elected to pursue an Orderly Sale.

**Last Surviving Owner.** The last surviving Person who appears as a signatory to the Unison HomeBuyer Agreement (or any mutually executed written addendum thereto).

**Maximum Authorized Debt.** The maximum principal amount of total indebtedness secured by any lien on the Property that Owner is permitted to incur under the Unison HomeBuyer Agreement, which amount is specified in **Section 8** of the Unison HomeBuyer Option Agreement. In the case of an open-end line of credit, the unused portion of any committed line of credit shall be considered principal indebtedness for purposes of determining whether the total indebtedness exceeds the Maximum Authorized Debt.

**Natural Person.** An individual, as opposed to a corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government, or any agency or political subdivision of any of the foregoing.

**Negative Remodeling Adjustment.** Is defined in **Section 8.3(e)** and **Section 10.3.**

**Net Condemnation Proceeds.** Is defined in **Section 8.17(a).**

**Non-Owner Occupant.** Any and all adult co-occupants of the Property when those co-occupant(s), whether spouses, domestic partners, family members, or others, are not on official record title to the Property and are not signatories to the Unison HomeBuyer Agreement Transaction Documents.

**Non-Owner Occupant Disclosure.** The **"Notice and Acknowledgment Regarding Spouses, Partners and Co-Occupants Who Are Not Signatories to the Unison HomeBuyer Agreement"** substantially in the form annexed hereto as Exhibit B.

**Notice Of Intention To Sell.** The written notice given by Owner to Investor under **Section 3.2(a)** of Owner's decision to market, sell or transfer the Property at least 45 days (or within a commercially reasonable time) prior to the closing of the sale.

**Option.** The right of Investor, pursuant to the Unison HomeBuyer Agreement to acquire an undivided percentage interest in and to the Property in exchange for the Unison Down Payment, the future payment of the Unison Purchase Price Balance, and such other consideration as is set forth in the Unison HomeBuyer Agreement.

**Option Exercise Notice.** A notice given in the manner prescribed by Section 3 of the Unison HomeBuyer Option Agreement, constituting Option exercise by Investor.

**Orderly Sale.** Is defined in **Section 7.4.**

**Original Agreed Value.** The value of the Property determined by Investor and agreed to by Owner at the time of the Owner Property Purchase and origination of the Option, as specified in **Sections 4** and **10** of the Unison HomeBuyer Option Agreement.

**Owner.** All of the Persons, individually and collectively, who appear on the record title to the Property as holding fee simple title to one hundred percent (100%) of the Property as of the Effective Date. "Owner" shall be defined as including **"Owner's Estate"** following the death of the Last Surviving Owner whenever such definition is reasonable or necessary to effectuate the intent and purposes of the Unison HomeBuyer Agreement, including, without limitation, as applicable in **Articles Two, Three, Six, Seven, Eight, Nine** and **Ten** of the Unison HomeBuyer Covenant Agreement.

**Owner's Estate.** Collectively, the heirs, beneficiaries and/or assignees of Owner charged with control, maintenance and disposition of the Property following the death of the Last Surviving Owner.



© 2016, Unison

**Owner Property Purchase.** The initial purchase of the Property by Owner in connection with Investor's provision of the Unison Down Payment, as distinguished from the Option purchase of Investor and from any subsequent transfer or sale of the Property by Owner as holder of title to the Property.

**Permitted Discretion.** Investor's sole and absolute discretion, exercised in good faith, for any reason.

**Permitted Encumbrances.** All licenses, easements, equitable servitudes, public bond obligations, and other conditions, covenants, restrictions and rights to which the Property is subject at the time the Unison HomeBuyer Agreement becomes effective: **(i)** that are stated as exceptions on the Confirmation Of Title, or **(ii)** to which Investor has expressly agreed in writing that the Property will remain subject following any exercise of the Option by Investor. "Permitted Encumbrances" do not include any Senior Loans, Senior Liens, or any other liens that secure the payment of any loans or the performance of any obligations owed to any creditor.

**Permitted Sale.** A Third Party Sale by Owner which fully complies with **Article Three** or is otherwise expressly consented to in writing by Investor.

**Permitted Senior Lien.** A perfected lien upon the Property securing a Permitted Senior Loan that is senior to the lien of the Unison HomeBuyer Security Instrument, obtained in connection with, or that was approved in writing by Investor upon Investor's execution of, the Unison HomeBuyer Agreement.

**Permitted Senior Loan.** An obligation secured by a Permitted Senior Lien, including, without limitation, any and all principal, interest, and expenses.

**Person.** An individual, corporation, limited liability company, partnership, joint venture, association, joint-stock company, trust, unincorporated organization or government, or any agency or political subdivision of any of the foregoing.

**Principal Residence.** Is defined in **Section 8.8(a)**.

**Prohibited Use.** Is defined in **Section 8.8(b)**.

**Property.** The residential real property purchased by Owner in the Owner Property Purchase that is the subject of the Unison HomeBuyer Agreement, the legal description of which is set forth as Exhibit A to the Unison HomeBuyer Option Agreement. The Property shall include only the real property described in that Exhibit A and the improvements and fixtures appurtenant to that real property, and not any other personal property of Owner.

**Protective Advances.** Any advances made by Investor that are the primary responsibility of Owner under the Unison HomeBuyer Agreement but are made by Investor for purposes of protecting the Investor Percentage and Investor's Rights, as more completely described in **Section 8.11**.

**Remodeling Adjustment.** The adjustment, defined in **Section 8.3**, and calculated pursuant to **Section 8.5**, that takes into account the increase or decrease in market value attributable to certain material modifications and/or Prohibited Uses of the Property by Owner during the Term of the Unison HomeBuyer Agreement.

**Revocable Trust.** A revocable trust, revocable living trust, *inter vivos* trust, revocable family trust or similar trust established in accordance with the laws of any state.

**Revocable Trust Rider.** A rider to the Unison HomeBuyer Security Instrument required to be executed by Owner in the event Owner elects to purchase the Property in the name of a revocable trust.

**Right Of First Refusal.** The right of Owner under **Section 7.4(f)** to purchase the Property on the same terms the Property is proposed to be sold to a third party in an Orderly Sale.

**Sale By Owner Transaction.** A proposed sale of the Property conducted either without a public listing of the Property on the open market or where the terms and conditions of the sale have been principally negotiated by Owner without agency representation.

**Sales Commissions.** All broker fees, sales commissions, finder fees and all other fees and costs owed to any broker, real estate agent or finder and incurred in connection with a sale or transfer of the Property or any interest in the Property.

**Senior Liens.** Liens on the Property that are perfected prior to or otherwise have priority over the lien created by the Unison HomeBuyer Security Instrument and which are approved by Investor, as so secured.



© 2016, Unison 

**Senior Loans.** Loans or other obligations that are secured by Senior Liens.

**Solicited Sale Value.** If within ninety (90) days prior to or following the closing of a Special Termination under **Section 6.2** Owner or Investor receives, or has pending, a written offer for the purchase of the Property, the Solicited Sale Value shall equal the gross amount of such offer, with no deduction or adjustment for any costs that Owner may incur if a sale of the Property were to be completed pursuant to such offer.

**Special Damages For Failure To Insure.** Are defined in **Section 8.16(f)**.

**Special Termination.** Is defined in **Section 6.2**.

**Special Termination Price.** Is defined in **Section 6.2**.

**Term.** The term of the Unison HomeBuyer Agreement, commencing on the Effective Date and expiring on the Expiration Date, and as may be automatically extended under **Sections 3.3, 4.3(b)** and **5.3(b)** of the Unison HomeBuyer Covenant Agreement.

**Termination.** Any non-exercise termination of the Option prior to the expiration of the Term.

**Third Party Buyer.** The Person that purchases, or proposes to purchase, the Property in a Third Party Sale. This Person may be Investor.

**Third Party Sale.** A sale of all, or of an interest in, the Property subsequent to the Owner Property Purchase under the Unison HomeBuyer Agreement. Any Third Party Sale by Owner must also be a Permitted Sale.

**Transaction Documents.** The Unison HomeBuyer Option Agreement, the Unison HomeBuyer Covenant Agreement, the Unison HomeBuyer Recorded Memorandum, the Unison HomeBuyer Security Instrument and any and all mutually executed riders, amendments, exhibits or supplements thereto.

**Trustor(s).** The Person or Persons designated as the "trustor" or "settlor" of a Revocable Trust in its formation documents.

**Trustee(s).** The Person or Persons designated as the "trustee" of a Revocable Trust in its formation documents and any subsequent amendments, and any successor trustees under such Revocable Trust.

**Unison Down Payment.** The portion of the Unison Purchase Price paid to Owner for the Option in advance, upon and as a part of the Owner Property Purchase, at the commencement of the Unison HomeBuyer Agreement Term.

**Unison HomeBuyer Agreement.** The Unison HomeBuyer Option Agreement, Unison HomeBuyer Covenant Agreement, Unison HomeBuyer Recorded Memorandum, and Unison HomeBuyer Security Instrument, and riders thereto, executed by and between Owner and Investor, together with all exhibits, schedules, attachments, and all amendments, supplements, and addenda now or hereafter executed by the parties.

**Unison HomeBuyer Covenant Agreement.** This Unison HomeBuyer Covenant Agreement executed by and between Owner and Investor.

**Unison HomeBuyer Option Agreement.** The Unison HomeBuyer Option Agreement executed by and between Owner and Investor by which Owner grants the Option to Investor.

**Unison HomeBuyer Recorded Memorandum.** The memorandum, entered into by Investor and Owner concurrently with the Unison HomeBuyer Agreement, which shall be recorded in the public records evidencing: **(i)** the provisions of the Unison HomeBuyer Agreement running with the land; and **(ii)** the Option.

**Unison HomeBuyer Security Instrument.** A deed of trust or mortgage, and security agreement, together with any riders thereto, given by Owner concurrently with this Unison HomeBuyer Covenant Agreement, and the Unison HomeBuyer Option Agreement, securing the Owner's performance under the Unison HomeBuyer Agreement by a lien on Owner's entire interest in the Property, which shall be recorded in the public records and which forms a part of the Unison HomeBuyer Agreement.

**Unison Purchase Price.** The total amount Investor has agreed to pay or credit for Investor's purchase of an undivided percentage interest in and to the Property as set forth (or adjusted) under **Sections 1** and **10** of the Unison HomeBuyer Option Agreement, as distinguished from the price Owner pays in connection with the Owner Property Purchase or the price which a future buyer may pay to purchase the Property.



© 2016, Unison 

**Unison Purchase Price Balance.** The Unison Purchase Price minus the Unison Down Payment previously given to Owner, as set forth in **Sections 1** and **10** of the Unison HomeBuyer Option Agreement, and subject to reduction under **Sections 7.3(d)** and **10.2** of the Unison HomeBuyer Covenant Agreement.

**Unpaid Owner Obligations.** Is defined in **Section 3.3**.



© 2016, Unison

**Exhibit A**

**IRREVOCABLE LIMITED POWER OF ATTORNEY**

**TO BE EXECUTED AND GRANTED BY OWNER TO INVESTOR
UPON MUTUAL AGREEMENT TO PURSUE ORDERLY SALE
[MAY DIFFER FROM STATE TO STATE]**

**Irrevocable Limited Power of Attorney Coupled with an Interest. Pursuant to the terms of the Unison HomeBuyer Agreement ("Unison HomeBuyer Agreement") entered into by and between as of ("Effective Date"), and subsequent agreement to pursue the remedy of Orderly Sale under Section 7.4 of the Unison HomeBuyer Covenant Agreement, Owner is executing this notarized Power of Attorney designating Investor and its successors and assignees as its true and lawful agents and attorneys-in-fact (with full power of substitution) in Owner's name and on Owner's behalf (in any and all capacities) for the sole and limited purpose of authorizing and empowering Investor exclusively (although only a co-owner of the Property) to market, advertise, sell and transfer title to one hundred percent (100%) of the Property, including Owner's interest therein. Accordingly, Investor or its successor or assignee and the other parties designated above as attorneys-in-fact, shall have the exclusive power and authority to do all acts and to execute any and all documents, instruments and agreements as such agents and attorneys-in-fact deem necessary or advisable:**

1. to solicit buyers for the entire Property and offers for a sale of the entire Property;

2. to advertise the entire Property for sale on reasonable and customary terms and conditions for a price that is reasonable in view of the then market conditions;

3. to sell the entire Property and transfer Owner's entire interest in, and title to, the Property on usual and customary terms and conditions, the proceeds of which shall be allocated to Owner and Investor as provided in the Unison HomeBuyer Agreement; and

4. to encumber the Property by obtaining loans secured by liens on the Property, in order to raise those funds reasonably required to improve, repair and prepare the Property for sale at a competitive price in its market.

The undersigned hereby acknowledge that this power of attorney is coupled with an interest in the Property pursuant to the Unison HomeBuyer Agreement and that, as a result, in addition to any consequences under law, this power is irrevocable and will survive the undersigned's death or incompetence. All acts that the attorneys-in-fact shall lawfully do, or cause to be done, under the authority of this Power of Attorney are hereby expressly approved, ratified and confirmed.

This Power of Attorney is a durable power of attorney and shall remain in force despite any Owner's subsequent incapacity or death.

In the event this Power of Attorney, or any portion thereof, is held to be invalid or stayed or enjoined by a court of competent jurisdiction, then such provision or portion thereof shall be considered separately and apart from every other provision of the Unison HomeBuyer Agreement for the purpose of determining the legal enforceability of every such other provision, and Owner agrees to execute and deliver to Investor a replacement Power of Attorney acceptable to the investor in its reasonable discretion.

Owner and Investor agree that if Investor is not allowed to exercise its rights under this Power of Attorney the damages to Investor would be irreparable and extremely difficult to estimate, making money damages or any remedy at law inadequate. Thus, in addition to any other rights and remedies available to it in law, equity or otherwise, Investor shall be entitled to specific performance of the provisions of this instrument.

From time to time in the future as long as the Unison HomeBuyer Agreement has not, or is not, terminated, Owner shall, at Investor's request, which shall be at Investor's Permitted Discretion, execute such additional or replacement powers of attorney as Investor may deem necessary identifying such other Investor officers as Owner's attorneys-in-fact as Investor deems reasonably necessary for purposes enumerated herein.

THIS POWER OF ATTORNEY SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL SUCH TIME AS THE UNISON HOMEBUYER AGREEMENT TERMINATES OR IS TERMINATED. Owner hereby ratifies and affirms all that such attorney-in-fact, or any substitute or substitutes, may do by virtue of the power conveyed hereby.

EXHIBIT ONLY – DO NOT SIGN ____________________ DATE: ______________________________
Signature

______________________________
Print Name

EXHIBIT ONLY – DO NOT SIGN ____________________ DATE: ______________________________
Signature

______________________________
Print Name

**ACKNOWLEDGMENT**

State of ______________________________ )
)
County of ______________________________ )

On ____________________, 20__, before me, ______________________________ (insert name and title of the officer) personally appeared ______________________________, who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of ______________ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature ________________________ (Seal)

**Exhibit B**

## NOTICE AND ACKNOWLEDGMENT REGARDING SPOUSES, PARTNERS AND CO-OCCUPANTS

## WHO ARE NOT SIGNATORIES TO THE UNISON HOMEBUYER AGREEMENT

**Unison HomeBuyer Agreement** ID Number:

This Notice and Acknowledgement Form (**"Form"**) contains important disclosures about the rights and liabilities of spouses, domestic partners, family members and other co-occupants of a Property (**"Property"**) subject to a **Unison HomeBuyer Agreement** who are not signatories to the Unison HomeBuyer Agreement (collectively referred to as "**Non-Owner Occupant(s)**"). Please READ IT CAREFULLY. This Form must be signed by all homeowners entering into and executing a Unison HomeBuyer Agreement (**"Unison Signatory(ies)"**) and by all Non-Owner Occupants. Any owner executing a Unison HomeBuyer Agreement (**"Owner"**) is responsible for ensuring that a complete and accurate version of this Form is returned to Unison Agreement Corp. (**"Unison"**) with the signatures of all Non-Owner Occupants as a prerequisite to entering into the Unison HomeBuyer Agreement.

The rights of a Non-Owner Occupant to occupy or retain possession of the Property following the death of the Last Surviving Owner who is a party to the Unison HomeBuyer Agreement, Option exercise, or an Owner Event Of Default under the Unison HomeBuyer Agreement, may be significantly affected by the operation of the Unison HomeBuyer Agreement. This is because the Unison HomeBuyer is an option agreement which gives Unison the right to exercise its option and purchase an undivided percentage interest (**"Investor Percentage"**) in the Property upon certain triggering events. *Two such triggering events are the death of the Last Surviving Owner, or an Owner Event Of Default, regardless of whether Non-Owner Occupants are occupying the Property at that time.* A Non-Owner Occupant of a Property subject to a Unison HomeBuyer Agreement will be required to settle Unison's option rights even if the Non-Owner Occupant inherits the Property as the heir, beneficiary or survivor of an Owner. Depending on the appreciation of the Property during the term of the Unison HomeBuyer Agreement, the amount required to settle Unison's option rights may be substantial. In addition, following an Event of Default (including default by Non-Owner Occupants), Unison may be entitled to exercise its recorded security interest and/or compel the sale of the Property, resulting in a Non-Owner Occupant losing possession and/or ownership thereof.

Unison cannot know who occupies the Property as a principal residence if those persons are not named on title. Unison must and will rely on the Owner to supply this information accurately.

The responsibility for notifying Unison of any change in the status of Non-Owner Occupants is also a continuing obligation of all Owners throughout the Term of the Unison HomeBuyer Agreement. All Owners are responsible for returning a complete and accurate amended Form to Unison with the signatures of all Non-Owner Occupants, both at inception of the Unison HomeBuyer Agreement, and in the event that any new Non-Owner Occupant not signatory to the Unison HomeBuyer Agreement commences to occupy the Property as his or her principal residence, or in the event a non-adult occupant of the Property attains the age of 18, at any time during the Term.

In the event that a Unison Signatory wishes to add another person onto the title to the Property after entering into the Unison HomeBuyer Agreement, he or she must execute the complete set of Unison HomeBuyer Agreement legal documents and meet all then-current Unison HomeBuyer Agreement education requirements. Unless and until these requirements are met, the individual will remain and must be identified to Unison as a Non-Owner Occupant of the Property subject to the option and contractual rights of Unison as above described.

All Owners acknowledge that they have read and understand this Form, and that they have been advised by Unison to consult independent legal counsel and estate planning professionals to ascertain the legal effects of the Unison HomeBuyer Agreement on future possession and occupancy of the Property.

☐ I represent and warrant that there are <u>no</u> Non-Owner Occupants living in my Property.

Acknowledged and agreed:

| | |
|---|---|
| Owner: | Owner: |
| EXHIBIT ONLY – DO NOT SIGN ________________ | EXHIBIT ONLY – DO NOT SIGN ________________ |
| Date signed: ________________ | Date signed: ________________ |

☐ I represent and warrant that I have presented this form to and discussed its contents with all Non-Owner Occupants living in my Property. The names and signatures of all Non-Owner Occupants and their relation to me appear below.

Acknowledged and agreed:

| | |
|---|---|
| Owner: | Owner: |
| EXHIBIT ONLY – DO NOT SIGN ________________ | EXHIBIT ONLY – DO NOT SIGN ________________ |
| Date signed: ________________ | Date signed: ________________ |
| Non-Owner Occupant 1: | Non-Owner Occupant 2: |
| EXHIBIT ONLY – DO NOT SIGN ________________ | EXHIBIT ONLY – DO NOT SIGN ________________ |
| Print name: ________________ | Print name: ________________ |
| Relation to Owner: ________________ | Relation to Owner: ________________ |
| Non-Owner Occupant 3: | Non-Owner Occupant 4: |
| EXHIBIT ONLY – DO NOT SIGN ________________ | EXHIBIT ONLY – DO NOT SIGN ________________ |
| Print name: ________________ | Print name: ________________ |
| Relation to Owner: ________________ | Relation to Owner: ________________ |



© 201[illegible], Unison

**<u>Exhibit C</u>**

**Asset Administration Fee Schedule**

There will be no fees charged for asset administration services.